TABOR STATE BANK, Respondent, v. JACOBS et al, Appellant.

(222 N. W. 141.)

(File No. 6450. Opinion filed December 4, 1928.)

636

*Sutherland, Payne & Linstad,* of Pierre, and *Harry A. Robinson,* of Yankton, for Appellant.

*F. M. Scoblic,* of Tyndall, for Respondent.

BROWN, J. On October 18, 1921, defendants William and Mary Jacobs gave a mortgage for $5,000 to Mary E. Cooley, due

one year after date, on a tract of land in Bon Homme county, bordering on the Missouri river, and described as containing 1,280 acres, more or less. On November 30, 1921, this mortgage and the note secured thereby were assigned to Tabor State Bank. The mortgage contained a recital that it was subject to one mortgage of $15,000 and two others to Tabor State Bank, one of $10,000 and one of $5,000, and also contained a clause that, in event of foreclosure, the mortgagors "will surrender possession of said premises immediately upon foreclosure sale, retaining the right of redemption." On November 24, 1922, the mortgagors conveyed the land by warranty deed to defendant Beddow, and he conveyed it to the defendants George and Martin Bertus and Martin J. Johnson, who assumed and agreed to pay the Cooley mortgage. On August 20, 1923, these grantees conveyed the land to the American Colonization Company, which assumed and agreed to pay four mortgages against the land aggregating $55,000, which included the Cooley mortgage.

Default being made in payment of the Cooley mortgage, Tabor State Bank commenced action to foreclose, and upon its application a receiver was appointed to take charge of the rents and profits of the land and apply them as ordered by the court. The grounds on which the receiver was appointed were that taxes on the land and interest on prior mortgages were past due and unpaid, that all parties who were personally liable for the payment of the money secured by the Cooley mortgage were insolvent, and that the quantity of land described in the mortgage had been diminished by erosion of the Missouri river so that the security had become inadequate to pay the mortgage debt.

About January 1, 1924, before the appointment of the receiver, Beddow and the American Colonization Company, which corporation was entirely controlled by Beddow, assigned in writing all rents and profits then accrued or thereafter to accrue from the mortgaged premises, to defendant Roxie T. Fenton, to be applied on a judgment for $30,000 which she had procured against the American Colonization Company, in an action in which the receiver was by leave of court garnished as the debtor of American Colonization Company.

On February 8, 1926, the court, on motion of plaintiff, on the theory that the assignment of rents was analogous to a chattel

mortgage on crops, which, under Code, § 1600, could not be a lien on any crops except those in actual existence when the mortgage was given, or grown within a year thereafter, made an order that rents and profits up to January 1, 1925, belonged and should be paid to Roxie T. Fenton, and that those accruing after January 1, 1925, be applied by the receiver (1) to payment of taxes on the mortgaged premises, and (2) the balance, if any, to the payment of interest on prior mortgages on the premises.

No issue was joined in the foreclosure action. Roxie T. Fenton appeared only in the matter of the receivership; some of the other defendants consented to judgment as prayed for, except that no personal judgment be taken against them, and the remaining defendants defaulted.

Judgment of foreclosure was entered April 23, 1926, for the amount found to be due on the mortgage, and, in addition to sheriff's and clerk's fees and statutory attorney's fee of $25, there was included as part of the costs the following items:

Trip to Yankton to procure order to show cause why a
    receiver should not be appointed ......................$ 20.00
Trip to Sioux Falls on return day of the order to show
    cause .................................................  40.00
Trip to Lake Andes to secure an order directing the re-
    ceiver to pay taxes ...................................  20.00
Minimum attorney schedule fees for foreclosure of mort-
    gage by action .......................................  290.00

On January 4, 1927, on report and petition of the receiver, the court found that the amount of rents collected prior to January 1, 1925, was $3,000.87; the amount collected subsequent to January 1, 1925, was $1,893.31; that the receiver had paid out on behalf of the trust $643.91; that the rents that accrued prior to January 1, 1925, belonged to Roxie T. Fenton, and ordered that the same be paid over to her, that the sum of $643.91 paid out by the receiver be deducted from the $1,893.31 rents received since January 1, 1925, and that the balance of $1,249.40 be applied by the receiver upon delinquent taxes upon the land and unpaid interest on incumbrances against the land.

The mortgaged premises were sold under the judgment of foreclosure on June 8, 1926, and were bid in by Tabor State Bank for the full amount due on the judgment; the sheriff's return of the

sale certifying that the amount so bid was paid to him in cash, and "that the amount for which said premises were sold was sufficient to satisfy said judgment in full."

Roxie T. Fenton is the sole appellant, and the brief on her behalf recites that she appeals from the order dated February 8, 1926, which directs the payment to her of all rents that accrued prior to January 1, 1925, and that subsequent rents be applied to the payment of taxes and interest on prior mortgages, from the judgment of April 23, 1926, from the order of January 4, 1927, and from the ex parte order of July 13, 1926, allowing the items of costs taxed in the case. The only questions argued on the appeal, however, are the alleged error of the court in ordering the rents of the land which accrued subsequent to January 1, 1925, to be applied to the payment of taxes and interest on prior mortgages, and the allowance of certain items of costs. Up to the time of taking the appeal, nothing had been paid by the receiver on taxes or on interest on prior mortgages.

The allowance of $80 for trips (presumably by plaintiff's attorney) is clearly erroneous. There is no statute allowing compensation to plaintiff's attorney for trips to court, either at a general term or to present business before a judge in chambers, to be taxed as costs.

The allowance of $290 as the minimum attorney schedule fees for foreclosure of a mortgage by action is likewise erroneous. There is no law authorizing the minimum attorney schedule fees adopted by state or local bar associations for foreclosure of a mortgage by action to be taxed as part of the costs in a case. No issue was joined in this case, and no attorney's fee other than $25 could lawfully be taxed as part of the costs. The aggregate of these items, $370, was improperly included in the costs of the foreclosure action.

The assignment of the rents and profits to Roxie T. Fenton was clearly not analogous to a chattel mortgage on crops. It was, in fact as well as in law, a transfer of all rents and profits accruing from the land, and entitled Roxie T. Fenton to the rents and profits so long as her assignors were entitled to possession, unless her judgment against American Colonization Company was sooner paid. An assignment is a transfer of property, or of any estate or right therein. 5 C. J. 836. The right to the rent of land is property, and may be transferred. Code, § 519.

■ ■ The mortgage provided that, in the event of foreclosure of the mortgage, the mortgagors "will surrender possession of said premises immediately upon foreclosure sale." In West v. Middlesex Banking Co., 33 S. D. 465, 146 N. W. 598, we said that, by the provisions of Civil Code, § 2054 (R. C. 1919, § 1558):

"The mortgagor may, by the terms of the mortgage itself or by agreement thereafter entered into, grant possession to the mortgagee."

In the case at bar, the mortgagors, by the terms of the mortgage itself, agreed to surrender possession immediately upon the foreclosure sale. The party to whom such possession would of necessity be surrendered was the purchaser at foreclosure sale, Tabor State Bank. The possession carried with it the right to the rents and profits, so that from the date of sale, June 8, 1926, Tabor State Bank was entitled to the rents and profits of the land. 36 C. J. 364, § 1205. But at the sale it purchased the land for the full amount due upon its judgment; therefore the entire debt owing to it and secured by the mortgage was satisfied by the foreclosure. The land was necessarily sold subject to prior mortgages and taxes, and the price paid was for the equity of redemption, not for the land free of incumbrances. Boyce v. Hawn (S. D.) 216 N. W. 589. The bank therefore had no right to have any part of the rents accruing prior to the sale applied in payment of either taxes or interest on prior incumbrances, nor on the costs of the action. The costs, as well as the debt, had already been satisfied by the bank's bid of the full amount due on the judgment at the date of sale.

■ The court finds that there was collected for rents, subsequent to January 1, 1925, $1,893.31, but there is nothing in the record from which it can be determined exactly how much of this accrued before the date of sale, June 8, 1926, and how much, if any, after that date. Appellant is entitled to all of the rent accruing between January 1, 1925, and June 8, 1926.

The order of January 4, 1927, in so far as it directs any part of the rents and profits of the land accruing between January 1, 1925, and June 8, 1926, to be applied toward the payment of costs in the foreclosure action or to the payment of delinquent taxes and unpaid interest on prior incumbrances against the mortgaged premises, is reversed, and the cause remanded for further proceedings in harmony with this opinion.

BURCH, P. J., and POLLEY and SHERWOOD, JJ., concur.

CAMPBELL, J., absent and not participating.