**COMMUNITY CREDIT UNION OF NEW ROCKFORD, NORTH DAKOTA, Plaintiff and Appellant,**

v.

**Lynn HOMELVIG and Cindy Homelvig, husband and wife, Defendants and Appellees.**

**Civ. No. 920001.**

Supreme Court of North Dakota.

July 28, 1992.

---

Michael J. Morley, of Morley & Morley, Ltd., Grand Forks, for plaintiff and appellant. Argued by Robert M. Light.

William P. Harrie (argued), of Nilles, Hansen & Davies, Ltd., Fargo, for defendants and appellees.

ERICKSTAD, Chief Justice.

The Community Credit Union of New Rockford appeals from a district court summary judgment dismissing its action against Lynn and Cindy Homelvig. We affirm.

The Homelvigs leased a house from the Credit Union on a month-to-month basis with an option to purchase. The agreement between the parties was oral; no written lease agreement was ever signed by the parties. The Credit Union insured the house with a policy issued by Cumis Insurance Society. The Homelvigs obtained renters insurance, including liability coverage, from North Star Mutual Insurance Company.

On August 22, 1990, a fire destroyed the kitchen and caused smoke damage to the remainder of the house. Cumis paid $38,307 to the Credit Union for the damages.

Cumis then brought this subrogation action in the Credit Union's name, alleging that the Homelvigs negligently caused the fire. The Homelvigs moved for summary judgment, asserting that they were co-insureds under the Cumis policy and that subrogation was barred as a matter of law. The district court concluded that the Homelvigs were co-insureds under the Cumis policy and granted summary judgment. Cumis, through the Credit Union, appealed.

The purpose of summary judgment is to promote the prompt and expeditious disposition of a legal conflict on its merits, without trial, if no material dispute of fact exists or if only a question of law is involved. *E.g., Stuhlmiller v. Nodak Mutual Insurance Co.,* 475 N.W.2d 136, 137 (N.D.1991); *United Electric Service & Supply, Inc. v. Powers,* 464 N.W.2d 818, 819 (N.D.1991). The dispositive issue in this case is a question of law: whether a tenant is an implied co-insured on a landlord's fire insurance policy as a matter of law, absent an express agreement to the contrary. If the tenant is a co-insured under the policy, subrogation is unavailable. *See Agra–By–Products, Inc. v. Agway, Inc.,* 347 N.W.2d 142, 145 (N.D.1984); 6A Appleman, Insurance Law and Practice § 4055 (1972); 16 Couch, Insurance Law § 61:137 (2d ed. 1983).

The great majority of courts which have addressed this issue have held that, absent an express agreement to the contrary, a tenant is an implied co-insured under the landlord's fire policy and subrogation is barred. *See, e.g., Tate v. Trialco Scrap, Inc.,* 745 F.Supp. 458 (M.D.Tenn.1989); *Alaska Insurance Co. v. RCA Alaska Communications, Inc.,* 623 P.2d 1216 (Alaska 1981); *Liberty Mutual Fire Insurance Co. v. Auto Spring Supply Co.,* 59 Cal.App.3d 860, 131 Cal.Rptr. 211 (1976); *Safeco Insurance Cos. v. Weisgerber,* 115 Idaho 428, 767 P.2d 271 (1989); *New Hampshire Insurance Group v. Labombard,* 155 Mich.App. 369, 399 N.W.2d 527 (1986); *Safeco Insurance Co. v. Capri,* 101 Nev. 429, 705 P.2d 659 (1985); *Sutton v. Jondahl,* 532 P.2d 478 (Okl.Ct.App.1975); *Fashion Place Investment, Ltd. v. Salt Lake County,* 776 P.2d 941 (Utah Ct.App. 1989); *Cascade Trailer Court v. Beeson,* 50 Wash.App. 678, 749 P.2d 761 (1988).

As noted by one leading commentator:

"The modern trend of authority holds that the lessor's insurer cannot obtain subrogation against the lessee, in the absence of an express agreement or lease provision establishing the lessee's liability, because the lessee is considered a co-insured of the lessor for the purpose of preventing subrogation; the parties are co-insureds because of the reasonable expectations they derive from their privity under the lease, their insurable interests in the property, and the commercial realities under which lessors insure

leased premises and pass on the premium cost in rent and under which insurers make reimbursement for fires negligently caused by their insureds' negligence." 6A Appleman, *supra*, § 4055, 1991 Supp. at 79. Professor Keeton also advocates the majority rule:

"The possibility that a lessor's insurer may proceed against a lessee almost certainly is not within the expectations of most landlords and tenants unless they have been forewarned by expert counseling. When lease provisions are either silent or ambiguous in this regard—and especially when a lessor's insurance policy is also silent or ambiguous—courts should adopt a rule against allowing the lessor's insurer to proceed against the tenant."

Keeton & Widiss, Insurance Law § 4.4(b) at 340–341 (1988) (footnote omitted).

The seminal case setting forth the majority rule is *Sutton v. Jondahl, supra,* in which the tenant's son had caused a fire damaging the insured premises. Concluding that the landlord's insurer could not seek subrogation against the tenant, the court reasoned:

"Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance. This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest. Here the landlords (Suttons) purchased the fire insurance from Central Mutual Insurance Company to protect such interests in the property against loss from fire. This is not uncommon. And as a matter of sound business practice the premium paid had to be considered in establishing the rent rate on the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. And of course it follows then that the tenant actually paid the premium as part of the monthly rental.

"The landlords of course could have held out for an agreement that the tenant would furnish fire insurance on the premises. But they did not. They elected to themselves purchase the coverage. To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting. Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise....

"Basic equity and fundamental justice upon which the equitable doctrine of subrogation is established requires that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary. The company affording such coverage should not be allowed to shift a fire loss to an occupying tenant even if the latter negligently caused it.... For to conclude otherwise is to shift the insurable risk assumed by the insurance company from it to the tenant—a party occupying a substantially different position from that of a fire-causing third party not in privity with the insured landlord."

*Sutton v. Jondahl, supra,* 532 P.2d at 482.

Other courts have expanded the *Sutton* rationale, addressing various public policies which support the rule. For example, in *Safeco Insurance Co. v. Capri, supra,* 705 P.2d at 661, the Supreme Court of Nevada stated:

"It is not uncommon for the lessor to provide fire insurance on the leased property. As a matter of sound business practice, the premium to be paid had to be considered in establishing the rental rate. Also, such premiums would be chargeable against the rent as an overhead or operating expense. Accordingly, the tenant actually paid the premium as

part of the monthly rental. *Sutton, supra*, 532 P.2d at 482. Courts therefore consider it to be an undue hardship to require a tenant to insure against his own negligence, when he is paying, through his rent, for the fire insurance which covers the premises....

"Moreover, insurance companies expect to pay their insureds for negligently caused fires and adjust their rates accordingly. In this context, an insurer should not be allowed to treat a tenant, who is in privity with the insured landlord, as a negligent third party when it could not collect against its own insured had the insured negligently caused the fire."

*See also New Hampshire Insurance Group v. Labombard, supra*, 399 N.W.2d at 531.

The court in *Tate v. Trialco Scrap, Inc., supra*, 745 F.Supp. at 473, also emphasized that it is the tenant who ultimately bears the cost of the landlord's insurance premiums:

"The realities of who ultimately pays for the insurance also support adoption of this rule. Despite the fact that the lessor may actually send the premium check to the insurance company, the lessee ultimately pays for insurance through his rent checks, because the lessor takes his own costs into account when setting rent. If the lessee is ultimately the source of the insurance payment, simple equity would suggest that he be able to benefit from that payment unless he has clearly bargained away that benefit."

Other policy arguments in favor of the majority rule include preventing windfalls to insurers and preventing multiple policies and overlapping coverage. *See, e.g., Tate v. Trialco Scrap, Inc., supra*, 745 F.Supp. at 473; *Safeco Insurance Cos. v. Weisgerber, supra*, 767 P.2d at 274.

The cases adopting the majority rule are well-reasoned and highly persuasive. We hold that, absent an express agreement to the contrary, a tenant is an implied co-insured under the landlord's insurance policy and the insurer may not seek subrogation against the tenant.

The district court did not err in holding that the Homelvigs were implied co-insureds under the Cumis policy. Accordingly, summary judgment was appropriate. The judgment is affirmed.

VANDE WALLE, LEVINE, MESCHKE and JOHNSON, JJ., concur.