2002 ND 81

**Paul UREN, Plaintiff and Appellant,**

v.

**DAKOTA DUST–TEX, INC., Defendant and Appellee.**

**No. 20010205.**

Supreme Court of North Dakota.

May 14, 2002.

Randall J. Bakke (argued) and Michael J. Hagburg (on brief), Smith Bakke Hov-

land & Oppegard, Bismarck, ND, for plaintiff and appellant.

Steven A. Storslee (argued) and Chris A. Edison (on brief), Storslee Law Firm, P.C., Bismarck, ND, for defendant and appellee.

MARING, Justice.

[¶ 1] Paul Uren has appealed from a summary judgment dismissing his action against Dakota Dust–Tex, Inc. ("Dakota") for damages resulting from a fire in a building leased to Dakota by Uren. We conclude that (1) Dakota was an implied co-insured under Uren's property insurance policy and subrogation was therefore barred; (2) Dakota was not liable for lost rents; (3) Dakota was not liable for Uren's insurance deductible and travel expenses to view the damaged building; and (4) an attorney's travel expenses to attend a pretrial product inspection were not recoverable as costs or disbursements. Accordingly, we affirm in part, reverse in part, and remand for entry of an amended judgment in accordance with this opinion.

I

[¶ 2] Dakota operates a commercial laundry in a building it leases from Uren. On October 5, 1998, the building was extensively damaged by fire. Uren alleges the fire resulted from spontaneous combustion of towels which a Dakota employee had placed in a laundry cart without allowing an adequate cool-down period.

[¶ 3] Uren had purchased property insurance on the building from Heritage Mutual Insurance Company ("Heritage"). Uren's policy with Heritage provided replacement cost coverage and coverage for lost rents. Heritage paid Uren more than $160,000 for the cost to repair the building and for lost rents.

[¶ 4] Heritage brought this subrogation action in Uren's name against Dakota, alleging Dakota had negligently caused the fire which damaged the building. Uren

also sought to recover $2000 in uninsured losses from Dakota. Dakota moved for summary judgment, alleging it was an implied co-insured under Uren's property insurance policy and that Heritage was therefore barred from seeking subrogation. The district court granted summary judgment dismissing Uren's complaint, and Uren appealed.

II

[¶ 5] Uren argues the district court erred in concluding that Dakota was an implied co-insured under Uren's property insurance policy and that a subrogation action was therefore barred.

[¶ 6] We addressed this issue in *Community Credit Union v. Homelvig*, 487 N.W.2d 602 (N.D.1992). The Homelvigs leased a house from Community Credit Union and, after a fire caused significant damage to the house, Community Credit Union's insurer paid under its policy. The insurer then brought a subrogation action alleging the Homelvigs had negligently caused the fire. Agreeing with "[t]he great majority of courts which have addressed this issue," we held that, "absent an express agreement to the contrary, a tenant is an implied co-insured under the landlord's insurance policy and the insurer may not seek subrogation against the tenant." *Id.* at 603, 605.

[¶ 7] Uren argues that the following provisions in his lease with Dakota constitute "an express agreement to the contrary," taking this case out of the *Homelvig* rule:

HOLD HARMLESS:

The Lessee agrees to indemnify and save the Lessor harmless against any and all claims, damages, costs and expenses, including reasonable attorney fees arising out of or connected with the conduct or management of the business

conducted by the Lessee on the demised premises. . . .

. . . .

## LIABILITY INSURANCE:

The Lessee agrees to take out public liability insurance covering the demised premises. Said policy or policies shall be for an amount of at least Five Hundred Thousand Dollars ($500,000.00), for death or injury to one or more persons, plus Twenty–Five Thousand Dollars ($25,000.00) property damage, which said policy or policies of insurance shall name the Lessor as additional insureds thereunder. Lessee further agrees to maintain the same at Lessee's sole cost and expense in full force and effect, during the entire term of this lease or any renewal hereof.

Uren argues the first provision makes Dakota responsible for all damages to the building, and the second provision required Dakota to procure insurance naming Uren as an insured to cover damage to the building.

[¶ 8] We do not believe these provisions express a clear, unambiguous intent to make Dakota liable for damages to the building or an intent that Dakota not be considered a co-insured under Uren's property insurance policy. The first provision is a standard hold harmless clause, which this Court has construed as "a promise to protect and defend the indemnitee from all *claims of third parties.*" *Bridston v. Dover Corp.*, 352 N.W.2d 194, 197 (N.D.1984) (emphasis added); *see also Olander Contracting Co. v. Gail Wachter Investments*, 643 N.W.2d 29, 2002 ND 65, ¶ 16; *St. Paul Fire and Marine Ins. Co. v. Amerada Hess Corp.*, 275 N.W.2d 304, 308 (N.D.1979). It is not a clear, express agreement that Dakota would not be considered a co-insured under Uren's property insurance.

[¶ 9] Uren has also misconstrued the provision requiring Dakota to procure liability insurance and name Uren as an additional insured. Uren argues the clear purpose of the insurance clause was to require Dakota to purchase insurance to protect the building. Uren asserted "Dakota was also required to name Uren as an additional insured under the policy" and "[t]hus, the subject insurance policy was to provide direct coverage to Uren for property damages sustained by Uren."

[¶ 10] The insurance clause in the lease did not require Dakota to purchase *property* insurance on the building, but only required Dakota to purchase *liability* insurance and name Uren as an additional insured. Naming Uren as an insured under a liability policy would not provide protection for Uren's building, but would only protect Uren from liability claims of third parties. Naming Uren as an additional insured did not create a "loss payable clause" to protect Uren's building. *See Barsness v. General Diesel & Equip. Co.*, 422 N.W.2d 819, 826 (N.D.1988). Our prior cases indicate that when a lease contains a hold harmless clause and a clause requiring the tenant to purchase liability insurance naming the landlord as an additional insured, the only purpose for such an insurance provision is "to protect [the landlord] from the consequences of its own negligent acts." *Rupp v. American Crystal Sugar Co.*, 465 N.W.2d 614, 617 (N.D. 1991); *Vanderhoof v. Gravel Products, Inc.*, 404 N.W.2d 485, 492 (N.D.1987); *Bridston*, 352 N.W.2d at 197.

[¶ 11] Furthermore, we note the insurance clause required Dakota to purchase liability insurance with coverage of property damage in the amount of $25,000. If the parties had intended this insurance to provide coverage for damage to the building, they certainly would have provided for a greater amount of coverage. This insurance was clearly intended to provide coverage only for Dakota's or Uren's liability for

property of third parties damaged in the course of Dakota's business.

[¶ 12] If there were any doubt about the parties' intent regarding Uren's right to subrogation from Dakota, that doubt is erased by the following provision in the lease:

REPAIRS:

The Lessee shall take good care of the interior in order to preserve the demised premises in a good and orderly condition and shall make, as and when needed, all repairs to the interior of the demised premises ...; provided, however, that *repairs made necessary by reason of any cause or peril included within the coverage of Lessor's policy of property insurance shall be made by the Lessor to the extent of such insurance coverage.* [Emphasis added].

This clause unambiguously demonstrates the parties intended Uren would purchase property insurance covering the building, they would look to that insurance to cover any insured loss, and Dakota would be absolved of liability for any such loss.

[¶ 13] We conclude the lease contains no express agreement indicating Dakota should not be considered an implied co-insured under Uren's property insurance policy, and the *Homelvig* rule therefore applies. Accordingly, Heritage may not seek subrogation against Dakota.

III

[¶ 14] Uren argues that Dakota should be liable for lost rents caused by the fire, relying upon the following provision in the parties' lease:

DESTRUCTION OF PREMISES:

In case the building shall be at any time wholly or partially destroyed by fire or other unavoidable casualties, so that the leased premises shall be unfit for occupation or use, or in the event this building is wholly or partially destroyed by any cause whatsoever, ex-

cepting destruction caused by the willful act or misconduct of the Lessee, its agents or employees, this Lease shall terminate unless the Lessor shall give notice in writing within thirty (30) days of the happening of such occurrence of his intention to rebuild or repair. In the event such notice is given, this Lease shall remain in full force and effect with the rent to be abated or prorated (if partially destroyed) during the time required for rebuilding or repair.

[¶ 15] The fire in this case damaged only part of the building. Uren decided to repair the building and, in accordance with the above lease provision, timely notified Dakota. Dakota continued occupying the undamaged portion of the building, and Uren accepted prorated rental payments from Dakota under the above lease provision. Uren's policy with Heritage provided coverage for lost rents, and Heritage paid Uren for the prorated rents lost while the building was being repaired.

[¶ 16] Uren now claims Dakota was not entitled to prorate its rent under the lease because Dakota caused the fire. However, because Uren has recovered his lost rents under his property insurance, any claim for lost rents is through subrogation. Because we have concluded Dakota was an implied co-insured under Uren's policy with Heritage, subrogation is barred under *Homelvig*.

[¶ 17] Uren argues that even if *Homelvig* bars a subrogation claim against Dakota for damage to the building, we should treat the claim for lost rents separately because the lease expressly made Dakota liable for rent if its negligence caused the fire. We find it unnecessary to decide whether a tenant's liability can be "carved up" and the tenant be designated a co-insured for purposes of some claims but not others under *Homelvig*, because we conclude the lease does not expressly indi-

cate Dakota would be liable for lost rents in this case.

[¶ 18] Uren has alleged the negligence of Dakota's employee caused the fire. The lease provided that Dakota would remain liable for the full amount of the rent if the building was wholly or partially destroyed by "the willful act or misconduct" of Dakota or its employees. Uren has alleged only ordinary negligence by Dakota's employee. Ordinary negligence does not constitute a willful act or misconduct. *See, e.g., Rodenburg v. Fargo–Moorhead YMCA*, 2001 ND 139, ¶ 25, 632 N.W.2d 407 (differentiating negligence and willful conduct); *Peterson v. Traill County*, 1999 ND 197, ¶ 17, 601 N.W.2d 268 (differentiating ordinary negligence and willful misconduct); *Johnson v. Job Service North Dakota*, 1999 ND 42, ¶ 11, 590 N.W.2d 877 (quoting *ProServe Corp. v. Rainey*, 536 N.W.2d 373, 376 (N.D.1995)) (ordinary negligence does not constitute misconduct disqualifying a claimant from unemployment benefits); *Stokka v. Cass County Elec. Coop., Inc.*, 373 N.W.2d 911, 916 (N.D.1985) (Vande Walle, J., concurring) (differentiating ordinary negligence and willful acts); *Barta v. Hondl*, 118 N.W.2d 732, 734–36 (N.D.1962) (differentiating ordinary negligence and willful misconduct). Dakota was therefore entitled to prorate rent under the lease.

[¶ 19] The parties' conduct after the fire bolsters this interpretation. Uren gave notice of intent to repair the damages and prorated the rent while Dakota occupied the unaffected portion of the building.

[¶ 20] We conclude the subrogation action against Dakota for lost rents is barred.

### IV

[¶ 21] Uren contends that, even if subrogation is barred, he should be allowed to recover his uninsured losses. Dakota argues that Uren has recovered in-surance payments which far exceed the total damages claimed in this action and he therefore has no uninsured losses.

[¶ 22] Uren sought to recover total damages of $116,971.81 in this case. Of that amount, $109,114.23 was for actual value of the damage to the building; $5,850.00 was for lost rents; $500.00 was for Uren's insurance deductible; and $1,507.58 was for Uren's mileage, meals, and lodging to travel from his home in Tennessee to view the building.

[¶ 23] The amount of damages sought in this case reflects the directive of N.D.C.C. § 32–03–09.1 that "[t]he measure of damages for injury to property caused by the breach of an obligation not arising from contract ... is presumed to be the reasonable cost of repairs necessary to restore the property to the condition it was in immediately before the injury was inflicted." Because Uren had purchased replacement cost coverage, however, he actually received $160,680.38 from Heritage for his damages. Accordingly, Uren has received insurance proceeds which exceed his claimed damages in this case by more than $40,000.

[¶ 24] Uren argues that the *Homelvig* rule applies only to subrogation, and therefore does not preclude him from recovering any uninsured losses from Dakota. Uren claims the decision in *Agra–By–Products, Inc. v. Agway, Inc.*, 347 N.W.2d 142 (N.D.1984), allows a landlord to proceed against a tenant when the landlord has uninsured losses.

[¶ 25] In *Agra–By–Products*, Agway leased land and buildings from Agra. The lease provided that certain property insurance would be kept in force, and Agway would reimburse Agra for all insurance premiums on the property. However, the insurance coverage was for less than the actual value of the buildings. After a fire damaged the leased buildings and other

adjacent property, Agra sued Agway. This Court first concluded Agway was a co-insured under Agra's property insurance and subrogation was therefore barred. *Id.* at 146–50. The Court further concluded, however, that Agway was not absolved of liability for losses exceeding the insurance coverage:

> Looking to the lease, we find no agreement as to the procurement and maintenance of a specified level of insurance. Agway agreed to reimburse Agra for "all insurance premiums of any nature of [sic] kind paid by [Agra] for said insurance on the buildings" subject to the lease; "said insurance" referring to the insurance provisions in full force and effect as shown by the policy of insurance attached to the lease. Agra did not agree "to insure the premises against loss by fire to the extent of the fair insurable value thereof." *See City of Deland v. Dri–Clime Lamp Corp.,* 348 So.2d 1239, 1242 (Fla.App.1977). The terms of the lease cannot be construed to absolve Agway from liability for its negligence in causing Agra's uninsured loss. We conclude that Agway is limited in its protection under the lease to the extent of insurance coverage provided for by "the insurance provisions in full force and effect as shown by policy of insurance attached [to] and made a part [of the lease]." We construe this provision to include all insurance, in effect at the time of the fire, purchased by Agra on the leased property during the term of the lease with Agway.
>
> . . . .
>
> We hold, as a matter of law, that the provisions of the parties' lease absolve Agway from liability to Agra for fire damage caused by Agway's negligence to property subject to the lease, but only to the extent of insurance coverage purchased by Agra provided by the insurance policy or policies in force and effect for the property under lease to Agway.

*Agra–By–Products,* 347 N.W.2d at 151–52 (footnote omitted).

[¶ 26] This case in effect presents the converse of *Agra–By–Products:* rather than being underinsured, or suffering damages to uncovered property, Uren had purchased replacement cost coverage which paid out more than the total damages he could have recovered from Dakota in a negligence action. Uren nevertheless argues that it was he who "had the prudence to purchase replacement cost coverage from his insurer," and Dakota should not be able to reap the benefit of that coverage to avoid liability for uninsured losses.

[¶ 27] In resolving this issue, we look to the public policy underpinnings of the *Homelvig* rule. In *Homelvig,* the Court repeatedly stressed that the strongest policy favoring the majority rule was recognition that landlords pass on the cost of property insurance to the tenant when establishing the amount of rent, and the tenant should therefore enjoy the benefits of coverage when he has effectively paid the premium. *See Homelvig,* 487 N.W.2d at 603–05. The Court noted:

> "The realities of who ultimately pays for the insurance also support adoption of this rule. Despite the fact that the lessor may actually send the premium check to the insurance company, the lessee ultimately pays for insurance through his rent checks, because the lessor takes his own costs into account when setting rent. If the lessee is ultimately the source of the insurance payment, simple equity would suggest that he be able to benefit from that payment unless he has clearly bargained away that benefit."

*Id.* at 605 (quoting *Tate v. Trialco Scrap, Inc.,* 745 F.Supp. 458, 473 (M.D.Tenn. 1989)).

[¶ 28]  We believe that rationale applies here as well.  Although it may have been the landlord who "had the prudence to purchase replacement cost coverage," *Homelvig* recognizes that it was the tenant who ultimately paid the higher premiums, through increased rents, for that greater coverage.  Under *Homelvig,* a tenant is allowed to reap the benefit of insurance coverage it has paid for and thereby avoid subrogation.  Absent an express agreement to the contrary, a tenant should also be able to claim the benefit of higher-priced replacement cost coverage it paid for which reimbursed the landlord for damages in excess of his actual loss.

[¶ 29]  Uren concedes that his damages in his negligence action are limited to his actual loss of $116,000, and also concedes he has received $160,000 for that loss from his insurer.  Under *Agra–By–Products,* Dakota is absolved of liability for fire damage caused by its negligence "to the extent of insurance coverage provided." *Agra–By–Products,* 347 N.W.2d at 151. The insurance coverage paid for by Dakota through its rental payments provided coverage in excess of Uren's actual loss. The "uninsured losses" claimed by Uren are not for damage to other property not covered by the lease, but are directly attributable to the covered loss.  Under the circumstances presented in this case, we conclude Dakota is not liable for Uren's deductible and travel expenses.[1]

## V

[¶ 30]  Uren argues the district court erred in allowing as costs the travel expenses of Dakota's attorney to attend a pretrial product inspection.

[¶ 31]  Under N.D.C.C. § 28–26–10, costs may be allowed for or against either party in the discretion of the trial court.  *In re Estate of Dion,* 2001 ND 53, ¶ 44, 623 N.W.2d 720.  As part of the judgment in favor of a prevailing party, N.D.C.C. § 28–26–06 directs the clerk to tax that party's necessary disbursements. *Estate of Dion,* at ¶ 44.  A trial court's decision on costs and disbursements will not be overturned on appeal unless an abuse of discretion is shown.  *Dowhan v. Brockman,* 2001 ND 70, ¶ 10, 624 N.W.2d 690.  A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, or if it misinterprets or misapplies the law.  *Gaab v. Ochsner,* 2001 ND 195, ¶ 6, 636 N.W.2d 669; *US Bank Nat'l Ass'n v. Arnold,* 2001 ND 130, ¶ 21, 631 N.W.2d 150.

[¶ 32]  The district court allowed Dakota to recover as costs $509.41 for its attorney's travel expenses to attend an out-of-state pretrial inspection of a radio which had been found near the source of the fire. Uren argues that attorney travel expenses are not taxable as costs under *Braunberger v. Interstate Eng'g, Inc.,* 2000 ND 45, 607 N.W.2d 904.  In *Braunberger,* at ¶ 20, we held that attorney fees and expenses are generally not assessed as disbursements, but are normally reimbursed by the client.

[¶ 33]  Dakota argues *Braunberger* should only apply to an attorney's expenses incurred during trial, and attorney travel expenses incurred for pretrial discovery should be allowed.  Dakota argues such expenses are recoverable as "necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial" under N.D.C.C. § 28–26–06(2).

[¶ 34]  Attorney travel expenses for discovery are generally not recoverable

---

1.  Because of our resolution of this issue, we do not consider the underlying question of whether a landlord's travel expenses to view the damaged property are a proper element of damages recoverable in a negligence action.

by a prevailing party as costs or disbursements. *See* 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2676 (3d ed.1998); 20 Am.Jur.2d *Costs* § 61 (1995); 20 C.J.S. *Costs* § 124 (1990). We believe that general rule applies here. The holding of *Braunberger* was not limited to attorney travel expenses necessary to attend the trial. Although we did cite a South Dakota case, *Tabor State Bank v. Jacobs,* 53 S.D. 635, 222 N.W. 141 (1928), for the proposition that an attorney's travel expenses for trips to court cannot be taxed as costs, we stated our holding in *Braunberger* in broader terms: "Attorney travel and meal expenses are normally reimbursed by the client and not assessed as disbursements." *Braunberger,* 2000 ND 45, ¶ 20, 607 N.W.2d 904; *see also Westchem Agric. Chems., Inc. v. Engel,* 300 N.W.2d 856, 859 (N.D.1980) ("Generally, attorney fees and expenses are not allowable to the successful litigant in the absence of a statute providing for such an award."). Dakota has provided no cogent reasoning for a rule which would allow taxation of such expenses incurred during discovery but disallow them if incurred during trial. The general language of N.D.C.C. § 28–26–06(2) allowing expenses of "procuring evidence necessarily used or obtained for use on the trial" does not include attorney travel expenses to attend a product inspection. Rather, such attorney expenses are part of the attorney's fees and expenses which are normally reimbursed by the client.

[¶ 35] Dakota contends we have allowed taxation of attorney travel expenses in prior cases, citing *Patterson v. Hutchens,* 529 N.W.2d 561 (N.D.1995), *Lacher v. Anderson,* 526 N.W.2d 108 (N.D.1994), *Fleck v. ANG Coal Gasification Co.,* 522 N.W.2d 445 (N.D.1994), and *Keller v. Vermeer Mfg. Co.,* 360 N.W.2d 502 (N.D.1984). We did not specifically address recovery of attorney travel expenses for discovery in any of those cases, and to the extent they can be read to allow such expenses they are hereby clarified.

[¶ 36] We conclude that the district court misapplied the law when it allowed taxation of Dakota's attorney's travel expenses as costs.

## VI

[¶ 37] We have considered the remaining issues raised by Uren and find them to be without merit. We reverse that portion of the judgment allowing taxation of attorney travel expenses as costs. In all other respects the judgment is affirmed. We remand for entry of an amended judgment in accordance with this opinion.

[¶ 38] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.