Filed 4/2/09 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2009 ND 48

Neal Hoff, Brock Hoff, Michael Hoff,

Robert Messmer, Clare Messmer,

Rosemary V. Baer, Jeffrey A. Baer,

Renee R. Baer, Bradley J. Baer,

and Audrey J. Hawkins, Plaintiffs

v.

Blaine Fred Krebs, Loren L. Sayler,

Heart River Ranch, L.L.L.P., and 

Sayler Farms, L.L.L.P., Defendants

Loren L. Sayler,                                                                                            Appellant

            v.

Heart River Ranch, L.L.L.P.,                                                                         Appellee

No. 20080249

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Paul R. Sanderson (argued) and Jerry W. Evenson (on brief), Zuger Kirmis & Smith, P.O. Box 1695, Bismarck, ND 58502-1695, for appellant.

Randall J. Bakke (argued) and Mitchell D. Armstrong (on brief), Smith Bakke Porsborg & Schweigert, P.O. Box 460, Bismarck, ND 58502-0460, for appellee.

Hoff v. Krebs

No. 20080249

VandeWalle, Chief Justice.

[¶1] Loren Sayler appealed from a district court judgment awarding $67,624.00 to Heart River Ranch, L.L.L.P. in indemnification damages.  On appeal, Sayler argues the implied co-insured rule barred any claim against him and there was no express agreement that he would not be a co-insured under the insurance policy.  We affirm, holding the implied co-insured rule does not apply to claims arising from a third-

party action.

I.

[¶2] Heart River Ranch, L.L.L.P. is a 1700-acre tract of land located south of Richardton, North Dakota.  Mike Armstrong has been a co-owner and managing partner of Heart River Ranch since the mid-1990's in addition to his oil business, which he conducts under the name Armstrong Corporation.  In August of 1989, the Armstrong Corporation hired Loren Sayler as comptroller.  In addition to his employment with the Armstrong Corporation, Sayler conducted his own farming operation, and farmed several pieces of property owned by Armstrong, including Heart River Ranch. Part of Sayler’s duties at the Armstrong Corporation was to assure the various farm leases Armstrong held with tenants on his properties, including Sayler’s lease with Heart River, were prepared and executed on an annual basis.  

[¶3] Each lease that Sayler executed for Armstrong, including the lease he prepared on his own behalf on the Heart River property, included a “hold harmless” provision.  The language of the provision in the Heart River Ranch lease states:

10.  
Hold Harmless Provision.
 Tenant shall hold Landlord harmless from any and all damages, costs, and expense by reason of claims, demands, or suits by third persons arising from the operating of the leased premises.     

Armstrong testified his understanding of the provision was that, “in the event that something happens out there, which is a direct cause of action by the tenant, that as a landlord I would be held harmless for any liabilities or costs incurred to defend actions by the tenant.”  Armstrong testified that Sayler had never complained about the existence of the hold harmless language in his lease, and never requested that such language be omitted from his lease.  Sayler testified that his understanding of a hold harmless clause was that, if a “loss was claimed to be as a result of some negligence or fault on [his] part, that [he] would have to defend and indemnify Mr. Armstrong if he got sued.”  Further, Sayler stated at trial that he understood a hold harmless provision would include indemnifying Armstrong for any potential attorney’s fees.  However, both Armstrong and Sayler testified that they had never verbally discussed the hold harmless provision pertaining to Heart River Ranch. 

[¶4] At trial, Sayler also testified about insurance on Heart River Ranch.  Armstrong insured Heart River through State Auto Insurance Company.  Sayler admitted that he had not contributed toward the insurance premium Armstrong paid on the property, and had not believed that Armstrong would insure him under Armstrong’s insurance policy.  Further, Sayler testified that he had his own insurance policy for his farming operations, and that he knew he would need to use his policy in the event there was a loss relating to his operations on Heart River Ranch.  However, Sayler also testified that he had never discussed insurance on the Heart River property with Armstrong, and that Armstrong never specifically told Sayler he was not covered under Heart River’s insurance policy.  

[¶5] On September 1, 2004, a fire broke out at Heart River Ranch.  The weather that day was very hot and dry, and the grass was “dry and spindly.”  Sayler told Blaine Krebs, a farmhand he employed, to conduct a haying operation that day and that he wanted to get as much hay cut as possible.  While haying that day, Krebs also mowed some trails under Sayler’s direction.  During these operations, the fire started, and strong winds caused the fire to move onto neighboring lands, damaging acreage owned by three separate property owners.  Neither Armstrong nor any of the other Heart River partners were present when the fire started, nor did they direct Sayler or Krebs to mow or hay.  Further, Sayler was not using any equipment provided by Armstrong or Heart River.  The day after the fire, Sayler called his insurance company and Armstrong’s insurance company to report the fire.  Sayler testified he called his insurance agent because he understood that either he or his insurance company would have to defend Armstrong and pay him if there was a judgment against him or a claim related to his farming operations. 

[¶6] The neighboring landowners brought an action for negligence against Sayler, Krebs and Heart River Ranch.  Heart River requested that Sayler’s insurance company defend and indemnify Heart River and pay the attorney’s fees and costs in the action.  Sayler’s insurance company denied Armstrong’s request, citing the fact that it did not have a copy of the lease agreement between Heart River and Sayler.  Eventually State Auto, Armstrong’s insurance company, agreed to defend and indemnify Heart River in the action.  Heart River moved for, and was granted, summary judgment, leaving Krebs and Sayler as the sole defendants.  State Auto reimbursed Armstrong for the attorney’s fees Heart River incurred to that point.  

[¶7] Heart River filed a cross-claim against Sayler and Krebs for indemnification.  In its order, the district court found the hold harmless provision applied to the lease between Heart River and Sayler.  The court found the implied co-insurance rule did not apply to Sayler, concluding that the rule applied to the destruction of leased or insured property, not third-party claims against the landlord resulting from the lessee’s negligence, and the hold harmless language prevents the tenant from being treated as an implied co-insured.  The court subsequently released Krebs from liability, and found that Sayler was solely responsible for Heart River’s attorney’s fees totaling $67,624.00. 

II.

[¶8] On appeal, Sayler argues the district court erred when it found he was not an implied co-insured under Heart River’s policy.  He contends there was no express agreement between Heart River and Sayler which indicated he would not be covered under the policy.  

[¶9] Whether a party is an implied co-insured on a landlord’s insurance policy is a question of law.  
Cmty. Credit Union of New Rockford v. Homelvig
, 487 N.W.2d 602, 603 (N.D. 1992).  This Court reviews conclusions of law under the de novo standard.  
State v. Torgerson
, 2000 ND 105, ¶ 3, 611 N.W.2d 182.  A tenant is an implied co-insured under a landlord’s property insurance policy if there is no express agreement to the contrary.  
Homelvig
, 487 N.W.2d at 603.  If an individual is a co-

insured under a landlord’s property insurance policy, neither the landlord nor the landlord’s insurance carrier may pursue a subrogation claim against the tenant.  
Id.
  In 
Homelvig
, we discussed the policy reasons behind the implied co-insured rule:

The parties are [implied] co-insureds because of the reasonable expectations they derive from their privity under the lease, their insurable interests in the property, and the commercial realities under which lessors insure leased premises and pass on the premium cost in rent and under which insurers make reimbursement for fires negligently caused by their insureds’ negligence.     

Id.
 at 603-04 (
quoting
 6A Appleman, 
Insurance Law and Practice
, § 4055, 1991 Supp. at 79).

[¶10] Here, while there was no express agreement between Heart River and Sayler that Sayler would not be covered as an implied co-insured under Heart River’s insurance policy, there was a hold harmless provision in the lease between the parties. Sayler argues that this Court has previously held a hold harmless provision does not alone express a clear, unambiguous explicit intent that a lessee not be considered a co-insured under the lessor’s policy.  
Uren v. Dakota Dust-Tex, Inc.
, 2002 ND 81, ¶ 8, 643 N.W.2d 678.  However, the result in 
Uren
 is distinguishable from the present case.  In 
Uren
, the appellant owned a building which he leased to the appellee for the purpose of running a commercial laundry.  
Id.
 at ¶ 2.  A Dakota employee negligently started a fire which caused extensive damage to the building and, after Uren’s property insurance company paid for replacement cost coverage and lost rent coverage, it brought an action against Dakota for subrogation.  
Id.
 at ¶¶ 2-4.  This Court held that a hold harmless provision in the lease between Uren and Dakota did not constitute an express agreement that Dakota would not be considered a co-

insured by noting that a standard hold harmless clause is a “promise to protect and defend the indemnitee from all 
claims of third parties
.”  
Id.
 at ¶ 8 (emphasis in original).  

[¶11] Here, the original claim brought by the neighboring landowners was a third-

party claim. Those landowners sued Heart River, Krebs and Sayler to recoup damages suffered from the fire.  The claim implicates the liability insurance, not the property insurance, of the defendants.  Unlike the facts in 
Uren
, where the lessor’s property insurance company sought damages from the lessee for damages to the lessor’s building, the matter before us is a classic example of a situation in which a hold harmless provision applies. Here a third party, not related in privity of contract to the lessor or lessee, has been injured by the negligent action of the lessee, and the lessee has agreed to hold the lessor harmless.  The implied co-insured principle is derived from a “recognition of relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises.”  
Sutton v. Jondahl
, 532 P.2d 478, 482 (Okl. Ct. App. 1975).  Often, as was the case in 
Sutton
, this insurable interest is established through a common insurance policy, which is purchased by the lessor, and contributed to by the lessee through rental payments.  
See
 
id.
  Such an arrangement establishes privity between the parties, where each has contributed to a common insurance policy, and where the implied co-insurance rule directly applies.  

[¶12] Sayler has not cited, nor have we found, any cases applying the implied co-

insured rule to a third-party claim against the lessor.  Neither has Heart River Ranch cited, nor have we found, any cases which explicitly reject the rule as applied to a third-party claim.  However, the cases which do apply the rule apply it using language which clearly assumes it is applicable to those instances in which the damage is done to property in which there is a shared insurable interest.  
See, e.g.
, 
United Fire & Cas. Co. v. Bruggeman
, 505 N.W.2d 87, 89 (Minn. Ct. App. 1993) (recognizing the landlord and the tenant were co-insureds because each had an insurable interest in the property — the landlord a fee interest and the tenant a possessory interest).  
Sutton
 is recognized as the “seminal” case applying the rule, 
Homelvig
, 487 N.W.2d at 604; subsequent cases appear to discuss and apply the rule only where both parties share an insurable interest, and there is no explicit contrary agreement, because that was the premise on which the rule was formulated in 
Sutton
.

[¶13] Sayler makes a public policy argument that applying the implied co-insured rule to third-party claims would provide legal certainty and reduce economic costs by avoiding multiple insurance policies.  However, those policy arguments, though they may have some attraction, must be founded on legal principles. The legal principle underlying the rule is the mutually insurable interest and that interest is absent in a third-party negligence claim against the lessee. 

[¶14] Here, the damage was done to the property interests of third parties who were not in privity with Heart River or Sayler, and shared no equitable interest with them. The implied co-insured rule does not apply when the initial claim arises from an injured third party. Therefore, the rule does not bar the indemnification action brought by Heart River against Sayler.

III.

[¶15] We have considered the remaining issues and arguments raised by Sayler and determine they are either unnecessary to our decision or without merit.  The decision of the district court is affirmed. 

[¶16] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

I concur in the result.

Carol Ronning Kapsner