Plaintiff, a fire insurance company, paid the sum of $1963.52 to one R. E. Mitchell, Jr., to whom it issued a fire insurance policy with a builders' risk indorsement covering a building in course of construction by Mitchell at No. 1210 Waller Street, Bossier City, Louisiana. The petition set forth that the damage to the unfinished building resulted from the negligence of an employee of W. T. Beckett (doing business as W. T. Beckett Plumbing Company) and that plaintiff, having paid Mitchell and having been subrogated by him to all his rights, was entitled to judgment against the defendant plumbing company and the defendant, Royal Indemnity Company, carrier of *Page 808 
liability insurance covering defendant Beckett's "legal liability arising out of the operation of his business, known as W. T. Beckett Plumbing Company."
Defendants filed a general exception of no cause or right of action and a separate exception which was entitled "Exception of No Right of Action, Want of Interest, Lack of Standing in Court and Plea of Estoppel." In the second exception, defendants set forth that plaintiff had issued to R. E. Mitchell, Jr. a builders' risk policy covering the building described in plaintiff's petition and that the said policy "provided coverage for all materialmen, laborers and sub-contractors," and that the defendant and exceptor, W. T. Beckett, was a sub-contractor engaged in doing the plumbing work on the premises covered and was therefore "one of the assureds and was insured under said policy of insurance written by said plaintiff herein."
The exception further set forth that after the fire loss sustained by the builder Mitchell, said builder had requested defendant Beckett to submit "the amount of his (Beckett's) loss in said fire for plumbing, labor and fixtures, which amounted to the sum of $175.00, which amount was submitted to said plaintiff by said Mitchell as a part of the loss from said fire" and that subsequently, plaintiff paid to Mitchell an amount covering the entire fire loss and including the $175.00 damage to the plumbing fixtures and that the contractor Mitchell paid said amount to defendant Beckett and that plaintiff, as subrogee of Mitchell, is estopped by its payment to Mitchell and Mitchell's payment to Beckett, from prosecuting its suit against Beckett and his liability insurer.
The District Court, after taking testimony, gave judgment sustaining the exception of no right of action and the case is before us on appeal from that decision.
A reading of plaintiff's petition, defendants' exception (which contains a detailed recital of the facts) and of the record discloses that there is little if any conflict between the parties as to the facts upon which the District Court's decision was based.
R. E. Mitchell, Jr. contracted to build a residence at 1210 Waller Street, Bossier City, Louisiana. Plaintiff, some days prior to February 13, 1948, issued to Mitchell a policy of fire insurance with the usual builders' risk indorsement. Defendant Beckett entered into a contract with Mitchell to install the plumbing fixtures and do the necessary plumbing work. It is alleged that on February 13, 1948, the premises were damaged by fire to the extent of the amount sued for by virtue of the negligent operation of a blowtorch by one of defendant Beckett's employees.
After the fire, defendant Beckett was asked by Mitchell to estimate the cost of restoring the damaged bathroom and other plumbing to its condition before the fire, and gave an estimate of $175.00. Mitchell, after receiving estimates on other damage and after making his own survey, submitted a claim to plaintiff and on February 18th was paid by plaintiff the sum of $1963.52 in full settlement for the damage done by the fire.
After receiving the $1963.52 settlement from plaintiff and executing the subrogation in its favor, Mitchell paid defendant Beckett $175.00 to be used by Beckett as the cost of replacing the damaged fixtures and restoring the plumbing at the Waller Street premises to the condition which existed prior to the fire. In the District Court Beckett testified that this $175.00 figure included the cost of replacing his helper's tools and leather jacket damaged in the fire, and also the damage done to the fixtures not yet installed but which had been placed in the bathroom preparatory to installation.
Defendants in brief urge that plaintiff cannot maintain its action against Beckett (and his insurer) because Beckett was "one of the persons for whose benefit the policy was written by plaintiff" and rely upon the following paragraph from the policy indorsement:
"This policy also covers items of labor, materials, equipment, supplies, forms and temporary structures of all kinds to be used in the construction of said building, and (when not otherwise insured, and provided that values of same are included in the amount of insurance carried under this policy) builders' machinery, tools and equipment; all while forming a part of *Page 809 
or contained in said building or temporary structures or while in cars on switches or side tracks on premises described, or within 100 feet of building described in this policy, or while in the open on premises described, or when adjacent thereto while on sidewalks, streets or alleys."
The Louisiana Supreme Court in the case of Parks v. Hall et al., 189 La. 849, 181 So. 191, set forth the proven rule to guide courts in determining coverage under an omnibus clause in an automobile policy. The same principles apply to other types of policies, namely, that the policy should be construed, according to the evident intent of the parties to be derived from the words used, the subject matter to which they relate and the matters naturally or usually incident thereto.
A reading of the builders' risk indorsement as a whole makes it evident that the parties intended to cover either all or "this company's percentage" of the entire construction project. The very heading of the indorsement indicates coverage of both the materials used in the construction and the hazards incident to the building process. The indorsement specifically includes in the coverage materials, equipment, supplies, builders' tools, etc. of All Kinds, while forming a part of or contained within the building. The only other qualifications being that same be not otherwise insured and that its value be included in the amount of insurance carried under the policy. It is true that the indorsement does not provide specifically that the named materials, etc. need not be the property of the named insured. However, the language used, the evident intent of the parties, and the customs and practices of the building trade all make the conclusion plain that the indorsement covered the building materials and tools brought into the building by the various workmen, sub-contractors, specialists and artisans whose combined handiwork would result in the completed residence. Conceding, arguendo, that the failure of the indorsement to specifically provide that persons other than the named insured were protected, makes the language subject to a double construction — one in favor of the full coverage indicated so plainly, and the other limiting the coverage to the fraction of the materials, etc. owned by the named insured — then the applicable rule is that the indorsement language will be construed against the company which composed and issued the indorsement.
Applying the rules of interpretation set forth by the Supreme Court in the Parks-Hall case, supra, to the facts and circumstances of the present case, we conclude that the "builders' risk" indorsement before us is a sort of omnibus clause and had the effect of making the issuing company an insurer of defendant Beckett and of the other sub-contractors and "builders" to the extent that their labor, materials, builders' machinery, tools, etc. were brought into the building for construction purposes.
The testimony shows that at the time of the fire, only the tub had been set in or connected and that neither the lavatory or toilet had become a part of the building. Under these circumstances, these two fixtures remained the property of defendant Beckett and when plaintiff, through its subrogator Mitchell, paid Beckett for the damage done to these fixtures, its action constituted a recognition that Beckett was an insured under its builders' risk indorsement. A portion of the above quoted paragraph covers "builders' * * * tools and equipment * * * contained in said building." Plaintiff's paying (through its subrogator) Beckett for the damage done his plumbers tools, is a further indication that Beckett was an insured under the terms of the policy and so considered by plaintiff.
In a late case, Glens Falls Insurance Company et al. v. Globe Indemnity Company et al., 214 La.Sup. 467, 38 So.2d 139, the Glens Falls Insurance Company paid a building owner the amount of the fire damage done to a building, the construction of which had not been completed by one C. H. Treadwell, contractor. Taking a subrogation from the owner, the Glens Falls company, as subrogee of the owner, filed suit against the contractor for the amount paid the owner, alleging that the fire was caused by the negligence of the contractor, his agents or employees. The lower Court dismissed plaintiffs' suit on an exception of no cause or right of action and *Page 810 
the judgment was affirmed by the Supreme Court. The Supreme Court considered the rule too well established to require citation of authorities that an insurance company, which has paid a claim and taken a subrogation, has no right of action against a co-insured of the subrogor, even though the fire loss may have been caused by the negligence of the co-insured, and provided, of course, as is true in the case before us, that there is no design or fraud on the part of defendant.
For the reasons set forth, plaintiff, as subrogee of Mitchell, is without right of recovery against Beckett or his liability insurer.
The judgment appealed from is affirmed, with costs.