**FACTORY INSURANCE ASSOCIATION, Plaintiff-Respondent,**

v.

**DONCO CORPORATION, Defendant-Appellant.**

**No. 9336.**

Missouri Court of Appeals, Springfield District.

June 7, 1973.

Marvin L. Dinger, Ironton, for plaintiff-respondent.

V. Kenneth Rohrer, Roberts & Roberts, Farmington, for defendant-appellant.

TITUS, Chief Judge.

Apparently pursuant to the provisions of Chapter 100 RSMo 1969, V.A.M.S., a roofing granule plant was being constructed by the City of Annapolis (city) for use by The Ruberoid Company (Ruberoid). Architects for the project "supervised the job in lieu of a general contractor letting contracts directly with the subcontractors." Donco Corporation (Donco), "engaged in the contracting and construction business," was erecting structural steel on the job site when sparks from its torches dropped onto and ignited some packing crates containing certain motor control centers; the crated controls had previously been delivered by the electrical contractor. "The Ruberoid Co. and the City of Annapolis a municipal corporationi of Iron County, Missouri, Landlord, as their respective interests may appear," were the named insureds in a "Property Damage—Builder's Risk" insurance policy issued through The Factory Insurance Association (Factory). Factory paid Ruberoid $2,985.88 for the fire damage to the electrical controls. Claiming the fire had been negligently caused, Factory, as the alleged subrogee of its insured, brought this action against Donco to collect its fire loss payment. Two written stipulations of facts (the only evidence adduced) were submitted to the trial court which obliged Factory with a $2,985.88 judgment against Donco. The latter has appealed. We reverse.

At the time of the fire loss, Donco was working pursuant to a contract which, among other things, required the contractor to obtain various specified insurance coverages and furnish certificates thereof to the architects before beginning work. However, the "supplementary General Conditions" of the contract relating to "Fire Insurance with Extended Coverage," stated:

"Article 29. 'Fire Insurance with Extended Coverage' of the General Conditions (A1A Document A–201) shall be modified as follows and otherwise all provisions shall remain in force.

The Owner now has a Builders Risk Completed Value Form Policy, covering the perils of Fire, Extended Coverage and Vandalism, covering the work to be done under the Contract. This policy has been issued in the name of the Own-

er and the Contractor's interests will be covered thereby.

For the purpose of complying with such insurance the Owner's interest at any time shall be held to amount to the sum of all payments, which he shall have made to a Contractor on account of the Contract. For the same purpose, the Contractors [sic] interests shall be held to include any and all value under and pertaining to the Contract not above defined as the Owner's interest."

Pertinent portions of the insurance contract issued through Factory are:

" . . . THIS POLICY COVERS on the building(s), machinery and equipment, including additions and attachments and on all permanent fixtures belonging to and constituting part(s) of said building(s), all while in the course of construction and not otherwise . . .. Loss, if any, shall be adjusted with . . . Ruberoid . . . and payable to . . . Ruberoid . . . and the City . . ., Landlord, as their respective interests may appear.

\* \* \* \* \* \*

THIS POLICY ALSO COVERS:

A. temporary structures, materials, equipment and supplies of all kinds incident to the construction of said building(s) or structure(s) and builder's machinery, tools and equipment owned by the Insured; the Insured's interest in similar property of others; the Insured's liability for similar property of others, while in the custody of the Insured;

all while such property is on the described premises . . .;

B. contractors' interests in property described in paragraph A to the extent of the Insured's liability therefor;

C. the Insured's interest in and liability for railroad rolling stock and con-

tents thereof while on the described premises . . ..

\* \* \* \* \* \*

GENERAL CONDITIONS

SUBROGATION—The Company(ies) may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made under this Policy, but the Company(ies) shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver affect the Insured's rights to recover under this Policy."

Avoiding details that would render this opinion longer than necessary, it suffices to say that Donco's position is that the doctrine of subrogation is not available to Factory because Donco, though not a named insured, was, nevertheless, a coinsured under the policy; also, since Factory's rights against Donco would rise no higher than those possessed by its purported subrogor, and as the owners had expressly contracted and represented that they had insurance against the perils of fire covering their own and the contractor's interests, the agreement and representation of insurance satisfied in full all claims the owners (and thus Factory) may have had against Donco for negligence.

■ As to Donco's first contention, we find it affirmed by Transamerica Ins. Co. v. Gage Plumbing and Heating Co., 433 F. 2d 1051 (10th Cir. 1970). In the reported case, Harbin (the prime contractor) and the owner of a motel complex were named insureds in a standard builder's risk insurance policy issued by Transamerica. Gage (the plumbing subcontractor) relying on the owner's policy, carried no builder's risk insurance. Following Transamerica's payment for fire loss under the policy to its insureds, it brought a subrogation action against Gage alleging the fire had been caused by Gage's negligence. Transameri-

**334**

ca's policy was similar to that in question.[1] The court observed that the "also covers" provision presented an ambiguity that required the clause to be construed according to the intent of the parties [Hill v. Seaboard Fire & Marine Ins. Co., 374 S.W.2d 606, 611[8] (Mo.App.1963)], with adoption of the construction most favorable to the insured or other beneficiary. Reese v. Preferred Risk Mut. Ins. Co., 457 S.W.2d 205, 207[2] (Mo.App.1970); North Kansas City Memorial Hospital v. Wiley, 385 S. W.2d·218, 223[9] (Mo.App.1964). It additionally noted that because of the ambiguity, any provision designed to limit or restrict any coverage granted should be strictly construed against the insurer that fashioned the policy. Union Elec. Co. v. Pacific Indemnity Co., 422 S.W.2d 87, 92[4] (Mo.App.1967). The court concluded (l.c. 1055 of 433 F.2d) that the policy was intended to cover Gage, that Gage was a coinsured and "that where an insurance company attempts to recover, as a subrogee, from a coinsured generally covered under the policy, whose negligent act occasioned the loss, the action must fail in the absence of design or fraud on the part of the coinsured, which is not claimed in this case." In reaching its decision, the court adopted the interpretation of Gage and the District Court of the "also covers" provision, i.e., (l. c. 1053), "the policy, without limitation, specifically covers all materials, equipment and supplies 'of all kinds incident to the construction' of the building or structure, and also covers . . . 'builders' machinery, tools and equipment owned by the Insured or similar property of others for which the Insured is legally liable.' In other words, . . . the term, 'legally liable,' refers to or modifies only that portion of the sentence providing for coverage of 'builders' machinery, tools and equipment of others,' and

does not restrict the general coverage. . . . '[I]t would seem that the plain intent is to cover all aspects of construction and also, . . ., the builders' machinery, tools and equipment owned by the insured, or similar property of others for which the insured is legally liable, which to [the District] Court means that the principal contractor was responsible for any property of the sub-contractors on the premises being constructed." See also Louisiana Fire Ins. Co. v. Royal Indemnity Co., 38 So.2d 807, 809 (La.App.1949): "It is true that the [policy] does not provide specifically that the named materials, etc. need not be the property of the named insured. However, the language used, the evident intent of the parties, and the customs and practices of the building trade all make the conclusion plain that the [policy] covered the building materials and tools brought into the building by the various workmen, sub-contractors, specialists and artisans whose combined handiwork would result in the completed residence."

■ We believe Monsanto Chemical Co. v. American Bitumuls Co., 249 S.W.2d 428 (Mo.1952) authorizes adoption of Donco's second contention, supra. In *Monsanto* a fire, said to be of negligent origin, destroyed chemicals owned by Monsanto which were in the possession of Cal-Spray for processing into a liquid weed killer. The contract covering the processing provided (l.c. 430): " 'Monsanto agrees to carry adequate insurance to cover all stocks of materials held by Cal-Spray for Monsanto's account.' " After the fire Monsanto was paid for the loss by its insurance company and brought suit against Cal-Spray. Whether Monsanto was suing for itself or on behalf of its insurer did not matter because the "rights of a subrogee are not greater than those of the in-

---

1. Transamerica's policy: "This policy also covers temporary structures, materials, equipment and supplies of all kinds incident to the construction of said building or structure and, when not otherwise covered by insurance, builder's machinery, tools and equipment owned by the Insured or similar property of others for which the Insured is legally liable, all forming a part of or contained in said building or structure, temporary structures, or on vehicles, or in the open; only while on the premises described or within 100 feet thereof."

sured." (l.c. 431[2]). Nonetheless, the court held the contract for Monsanto to carry insurance was for the mutual benefit of the parties, otherwise there would be no purpose for the provision; and that the insurance, inter alia, was to protect Cal–Spray from liability for any fire due to its negligence by way of satisfaction from the insurance. In its opinion the court further concluded that had Cal-Spray procured fire insurance, but for the contract, such would have covered the loss, and that would be an additional reason for holding the agreed insurance was for the benefit of both Monsanto and Cal-Spray. A later observation regarding *Monsanto*, describes the opinion as "an illustration of the trend in the construction of such business contracts, . . .; namely, that where the parties agree for full insurance coverage of property the agreement is for the benefit of both, and the insurance proceeds will be held to constitute a satisfaction of any claims for loss by one party against the other." Rock Springs Realty, Inc. v. Waid, 392 S.W.2d 270, 277, 15 A.L.R.3d 774, 784 (Mo.1965).

The appeal before us now presents an agreement calling for Donco to obtain various insurance coverages but excepting fire insurance due to the fact the owners had a policy "covering the work to be done under the Contract;" the contract further represented that "the Contractor's interests will be covered thereby." We interpret this to mean the owners would carry fire insurance so that not only would they have protection but also Donco would have protection against liability for loss by fire. Moreover, the protection afforded Donco would include all fires (except arson) whether or not of negligent origin. Cf. Rock Springs Realty, Inc. v. Waid, supra, 392 S.W.2d at 278.

For the reasons stated, the judgment of the trial court should have been for Donco, and since it was not, the judgment nisi stands reversed. We order it so.

STONE, HOGAN and BILLINGS, JJ., concur.