2003 ND 43

**AMERICAN NATIONAL FIRE INSURANCE COMPANY as subrogee of United Crane & Excavation, Plaintiff and Appellant,**

v.

**Gary HUGHES, Defendant and Appellee.**

**No. 20020207.**

Supreme Court of North Dakota.

March 26, 2003.

Brian T. Suth (argued), Ellison, Nielsen, Knibbs, Zehe & Antas, P.C., Chicago, IL, and Eric G. Olsen (appeared), Jeffries, Olson & Flom, PA, Moorhead, MN, for plaintiff and appellant.

Steven L. Marquart, Cahill & Marquart, Moorhead, MN, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] American National Fire Insurance Company, as subrogee of United Crane & Excavation, appeals from a summary judgment dismissing its subrogation action against Gary Hughes. We hold American National is not entitled to subrogation from Hughes because for purposes of subrogation he was not a third party but an implied co-insured under American National's insurance policy with United Crane. We affirm.

I

[¶ 2] United Crane was a closely held corporation engaged in demolition work, bridge construction, and installation of underground water and sewer lines. Hughes' parents owned all the stock of United Crane, and he was an employee and officer of United Crane, acting as its director and vice president. American National insured United Crane under a "BUSINESSPRO" mono line property policy that designated United Crane as the insured and provided coverage for physical damage to its scheduled vehicles and equipment. The policy did not provide liability coverage for the scheduled property and did not explicitly designate United Crane's owners, officers, or employees as insureds.

[¶ 3] During nonbusiness hours on Saturday, January 13, 2001, Hughes was using United Crane's tools at its shop to do mechanical work on his personal snowmobile. Hughes' snowmobile was not used for United Crane's business and was not listed as scheduled property under American National's policy with United Crane. Hughes was using a shop vac to remove gasoline from his snowmobile's gas tank when a spark ignited the gasoline and caused a fire that damaged vehicles and equipment insured under American National's policy with United Crane. American National paid United Crane more than $250,000 for damage to property covered under the policy.

[¶ 4] American National thereafter brought this subrogation action against Hughes, alleging his negligence caused the damage to United Crane's property. The trial court granted Hughes summary judgment dismissal of American National's subrogation action against him, concluding he was an additional insured under American National's policy with United Crane. American National appealed.

II

[¶ 5] We review this appeal in the posture of summary judgment, which is a procedure for resolving a controversy on the merits without a trial if the evidence establishes there are no genuine issues of material fact, or inferences to be drawn from undisputed facts, and if the evidence shows a party is entitled to judgment as a matter of law. *Bender v. Aviko USA L.L.C.*, 2002 ND 13, ¶ 4, 638 N.W.2d 545. If the law is such that resolution of any factual disputes will not alter the result, the disputed facts are not material and summary judgment is appropriate. *Rich-*

*mond v. Nodland,* 552 N.W.2d 586, 588 (N.D.1996).

### III

[¶ 6] American National argues the trial court erred in deciding Hughes was an additional insured under its insurance policy with United Crane, because Hughes was not acting within the scope of his employment for United Crane when the fire occurred. American National argues there is a factual dispute about whether Hughes was acting within the scope of his employment when the fire occurred. American National argues the court erred in relying on a factually distinguishable out-of-state case, *see Fireman's Ins. Co. v. Wheeler,* 165 A.D.2d 141, 566 N.Y.S.2d 692 (N.Y.App.Div.1991), while ignoring established North Dakota law on respondeat superior. *See Zimprich v. Broekel,* 519 N.W.2d 588 (N.D.1994). American National argues the rule precluding subrogation from landlord-tenant cases is not applicable to this case, and asserts equitable principles support its subrogation claim against Hughes.

[¶ 7] Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of its employees while the employees are acting within the scope of their employment. *Nelson v. Gillette,* 1997 ND 205, ¶ 10, 571 N.W.2d 332; *Zimprich,* 519 N.W.2d at 590–91. The underlying rationale for the doctrine is the employer's right to control its employee's conduct, and the employer's vicarious liability extends only to an employee's acts done on the employer's behalf and within the scope of the employee's employment. *Zimprich,* at 591. In *Zimprich,* at 589, a Kenworth tractor owner leased his tractor to a common carrier, who provided loads for the owner to transport. This Court concluded the owner was performing his independent contractual duty to repair his tractor when a fire occurred, and the owner was not an employee of the common carrier acting within the scope of employment. *Id.* at 592–93. We further concluded the common carrier was not vicariously liable for the tractor owner's negligence because the common carrier was not exercising control over the owner's work. *Id.* at 593–94. However, *Zimprich* did not involve a subrogation claim and does not necessarily control whether American National is entitled to subrogation from Hughes.

[¶ 8] Subrogation is an equitable remedy which provides for an adjustment between parties to secure the ultimate discharge of a debt by the person who, in equity and good conscience, ought to pay for it. *St. Paul Fire & Marine Ins. Co. v. Amerada Hess Corp.,* 275 N.W.2d 304, 308 (N.D.1979); *State Farm Mut. Auto. Ins. Co. v. Wee,* 196 N.W.2d 54, 59–60 (N.D.1971). Generally, when an insurer pays its insured for a loss, the insurer is subrogated to the insured's right of action against any third party responsible for the loss. *Continental Ins. Co. v. Bottomly,* 250 Mont. 66, 817 P.2d 1162, 1164 (1991); *Reeder v. Reeder,* 217 Neb. 120, 348 N.W.2d 832, 836 (1984); *Pennsylvania Gen. Ins. v. Austin Powder,* 68 N.Y.2d 465, 510 N.Y.S.2d 67, 502 N.E.2d 982, 985 (1986); *Wheeler,* 566 N.Y.S.2d at 693. *See generally* 6A Appleman, *Insurance Law and Practice* § 4051 (1972); 16 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance* §§ 222:5 and 223:1 (3rd ed.2000). However, an insurer is not entitled to subrogation from its own insured for a claim arising from the very risk for which the insured was covered. *Bottomly,* at 1164; *Reeder,* at 836; *Austin Powder,* at 985; *Wheeler,* at 693. *See Uren v. Dakota Dust–Tex, Inc.,* 2002 ND 81, ¶¶ 6, 13, 643 N.W.2d 678; *Community Credit Union v. Homelvig,* 487 N.W.2d 602, 603,

605 (N.D.1992). *See generally* 6A Appleman, at ¶ 4055; 16 *Couch,* at §§ 224:1 and 224:3. An insurer is not entitled to subrogation from entities named as insureds in the insurance policy, or entities deemed to be additional insureds under the policy. *See Bottomly,* at 1164; *Reeder,* at 836; *Wheeler,* at 693; *Uren,* at ¶ 6; *Homelvig,* at 603. *See generally* 6A Appleman, at § 4055; 16 *Couch,* at § 224:12. An entity not named as an insured in an insurance policy is considered an additional insured when, under the circumstances, the insurer is attempting to recover from the insured on the risk the insurer had agreed to take upon payment of premiums. *See Bottomly,* at 1164; *Reeder,* at 836; *Wheeler,* at 693; *Uren,* at ¶ 6; *Homelvig,* at 603. *See generally* 6A Appleman, at § 4055. The rule precluding an insurer's subrogation claim against a co-insured generally applies absent fraud or design by the co-insured. *See Sherwood Med. Co. v. B.P.S. Guard Servs., Inc.,* 882 S.W.2d 160, 162 (Mo.Ct.App.1994); *State Farm Fire & Cas. Co. v. Sentry Indem. Co.,* 316 So.2d 185, 188 (La.Ct.App.1975). *See generally* 16 *Couch,* at § 224:10.

[¶ 9] In *Homelvig,* 487 N.W.2d at 605, this Court held that absent an express agreement to the contrary, a tenant was an implied co-insured under the insurer's policy with the landlord, and the insurer was not entitled to subrogation from the tenant. *See also Uren,* 2002 ND 81, ¶ 13, 643 N.W.2d 678 (holding *Homelvig* applies where lease contains no express agreement indicating tenant should not be considered an implied co-insured under landlord's property insurance policy). In *Homelvig,* at 603–04 (quoting 6A Appleman, at § 4055), this Court said the primary rationale for concluding a landlord and tenant were co-insureds was their " 'insurable interests in the property, and the commercial realities under which lessors insure leased premises and pass on

the premium cost in rent.' " *See also Uren,* at ¶ 27.

[¶ 10] Other courts have rejected subrogation claims in cases involving other relationships between the insured and a third party. *See Bottomly,* 817 P.2d at 1165; *Reeder,* 348 N.W.2d at 837; *Wheeler,* 566 N.Y.S.2d at 693. In *Bottomly,* at 1163–65, the court held a named insured's brother and nephew were additional insureds under a policy insuring a seasonal cabin used for recreational purposes by the insured's family. In *Reeder,* at 835–37, the court held the named insured's brother and niece were additional insureds while temporarily occupying the insured's house as a guest during construction of the brother's new house. In *Bottomly,* at 1165, and *Reeder,* at 836, the courts concluded the relationship between the named insured and a third-party tortfeasor was such that allowing subrogation would permit the insurer to sue its insured on the very risk the insurer had agreed to take upon payment of premiums.

[¶ 11] In *Wheeler,* 566 N.Y.S.2d at 693–95, the Appellate Division of the New York Supreme Court rejected an insurer's subrogation claim against the president and principal shareholder of the named insured, a closely held corporation that had incurred a fire loss and submitted a claim under a comprehensive business insurance policy. In *Wheeler,* at 693, the president and principal shareholder was an additional insured under the property portion of the insurance policy for up to $2,500 for fire loss for his personal effects at the insured premises, and he was a named insured on the automobile liability part of the policy. The comprehensive general liability part of the policy extended coverage as an additional insured to any corporate executive officer acting within the scope of that person's duties for injury to a person or to property not owned by the

corporation. *Id.* The insurer paid the closely held corporation's claim for a fire loss, and the corporation, through its president, executed a receipt subrogating the insurer to the corporation's right to recover from any third party and requiring the corporation to cooperate with the insurer. *Id.* The insurer then brought a subrogation action against the corporation's president and principal shareholder, alleging his negligence caused the fire. *Id.*

[¶ 12] The court held equitable principles and public policy precluded the insurer from obtaining subrogation from the president and principal shareholder of the insured. *Wheeler,* 566 N.Y.S.2d at 693. The court explained it would be inequitable to permit an insurer to pass the incidence of loss from itself to its own insured and avoid the coverage which its insured had purchased. *Id.* at 693–94. The court said the insurer was presumed to know the closely held corporation's relationship with its president and principal shareholder, and having agreed to insure a business enterprise in corporate form, the insurer was charged with knowledge that the insured entity could act only through its officers and employees. *Id.* at 694. The court said "[i]f subrogation against a *corporate* insured is ever to be barred under the doctrine that an insurer completely assumes the risk of a fire loss due to the negligence of the insured, at the very least the risk assumed must extend to the negligence of a corporate officer." *Id.* (emphasis in original).

[¶ 13] The court also explained that subrogation was precluded by the public policy for averting potential conflicts of interest. *Wheeler,* 566 N.Y.S.2d at 694–95. The court recognized the insurance policy required the insured to subrogate any claim for loss the insured might have against another person, to submit to examination under oath, to furnish a sworn statement of loss, and to do what was necessary to secure the insurer's right to recovery by subrogation. *Id.* The court said the corporation acted through its president, who was required to disclose the circumstances of the loss to the insurer, and if the president failed to provide necessary information to the insurer, the corporation would forfeit its rights under the policy. *Id.* at 695. The court said:

> [D]efendant, as the principal officer of the named insured corporation and with which he presumably is fully united in economic interest, has been placed in the dilemma of having to furnish the necessary information and to fully cooperate in plaintiff's efforts to recover the loss from him personally or forfeit his corporation's policy right to indemnity for the loss. We conclude that the compromise of the integrity of the insurer's relationship with its insured and the potential conflict of interest inherent in this dilemma forced upon defendant by plaintiff require denial of plaintiff's right of subrogation here.

*Id.*

[¶ 14] The relationship between United Crane and Hughes is not identical to the relationship between the corporation and its president and principal shareholder in *Wheeler.* Moreover, the *Wheeler* decision does not state whether the alleged negligence by the corporation's president and principal shareholder occurred within the scope of his employment, and there is a dearth of authority regarding the effect of corporate acts within or outside the scope of employment on a claim for subrogation. We conclude, however, the rationale of *Wheeler* precludes subrogation in a case where United Crane permitted Hughes and its corporate officers and owners to use its shop for work on their snowmobiles.

[¶ 15]  American National's policy designated United Crane as the insured and did not name Hughes, or any other individuals associated with United Crane, as additional insureds.  American National's policy included a "CONTRACTOR'S EQUIPMENT SCHEDULED COVERAGE FORM," which provided coverage for " 'loss' to Covered Property from any of the Covered Causes of Loss."  The policy defined "Covered Causes of Loss" to mean "Risks of Direct Physical 'Loss' to the Covered Property except those causes of 'loss' listed in the Exclusions."  The policy excluded coverage for losses caused by governmental action, nuclear hazard, and war and military action.  The policy also explicitly excluded coverage for losses resulting from dishonest acts by United Crane's employees or authorized representatives whether or not the acts occurred during the hours of employment.  However, the policy did not exclude coverage for losses resulting from acts outside the scope of employment of an officer, owner, or employee of United Crane.

■  [¶ 16]  A corporation is an artificial entity which can act only through its agents.  *United Accounts, Inc. v. Teladvantage, Inc.*, 499 N.W.2d 115, 117 n. 1 (N.D.1993); *Dewey v. Lutz*, 462 N.W.2d 435, 443 (N.D.1990).  *See Wheeler*, 566 N.Y.S.2d at 694.  Although Hughes did not own any stock in United Crane, American National agreed to insure United Crane in its corporate form and is charged with knowledge that United Crane could act only through its officers and employees.  *See Wheeler*, at 694.  Hughes was the vice president of United Crane.  He supervised his own crew of workers for United Crane, and he hired and fired the members of his crew.  Hughes' brother was president of United Crane, and his parents owned all of the outstanding stock in the closely held corporation.  Although Hughes may not

have been explicitly acting within the scope of his employment with United Crane when the fire occurred, American National does not dispute that Hughes, his brother, and his father all worked on their snowmobiles at United Crane's shop.  American National also does not dispute that Hughes worked on his snowmobile at United Crane's shop during business hours the week before the fire.  According to Hughes, he also stored his snowmobile at United Crane's shop.

[¶ 17]  Hughes' alleged negligence may not have been within the scope of his employment, and for purposes of summary judgment, we assume, without deciding, that he was acting outside the scope of employment.  However, the resolution of that factual issue will not alter the result in this case, because United Crane undisputedly permitted its corporate owners and officers to use its shop to work on their snowmobiles during business and nonbusiness hours.  American National insured United Crane for property damage to scheduled vehicles and equipment, which included a risk of loss for negligence by United Crane's corporate officers and employees.  Under these circumstances and in the absence of a claim of fraud or a provision specifically excluding coverage for acts by officers or employees outside the scope of their employment, the relationship between United Crane and Hughes is such that allowing subrogation against Hughes for his alleged negligence would permit American National to sue its insured for the very risk that American National insured and for which it received premiums.  We conclude that result would be inequitable.

[¶ 18]  We also conclude the public policy for averting potential conflicts of interest applies to this case.  *See Wheeler*, 566 N.Y.S.2d at 694–95.  American National's insurance policy required United Crane to

transfer to American National the right to recover damages from another to the extent of American National's payments to United Crane. The policy required United Crane to do everything necessary to secure American National's rights and precluded United Crane from doing anything to impair those rights. The policy required United Crane to submit to examination under oath about any matter relating to a claim and to cooperate in the investigation and the settlement of a claim. Under American National's policy, coverage was void in the case of misrepresentation of a material fact on a claim. Hughes was placed in the dilemma of furnishing necessary information and fully cooperating with American National's efforts to recover the loss from him personally, or forfeit United Crane's right to coverage for the loss. *Wheeler*, 566 N.Y.S.2d at 695. We agree with the public policy rationale in *Wheeler* that it would compromise the integrity of American National's relationship with United Crane and create a potential conflict of interest to allow American National's subrogation claim against Hughes.

## IV

[¶ 19] We conclude the undisputed material facts in this case establish Hughes was, for purposes of the subrogation claim, an implied co-insured under American National's policy with United Crane, and American National is precluded from obtaining subrogation from Hughes. We affirm the summary judgment.

[¶ 20] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.