2005 ND 114

**TRI–STATE INSURANCE COMPANY OF MINNESOTA, Plaintiff and Appellant**

v.

**COMMERCIAL GROUP WEST, LLC, a North Dakota Limited Liability Company; and Lawson, Inc., a North Dakota Corporation, d/b/a DL Enterprise Construction, Defendants and Appellees**

and

**Commercial Group West, LLC, Third–Party Plaintiff**

v.

**Dennis Lawson; Virginia Lawson; and Lawson, Inc., a North Dakota Corporation, d/b/a DL Enterprise Construction, Third–Party Defendants.**

No. 20050007.

Supreme Court of North Dakota.

June 22, 2005.

Collin P. Dobrovolny, McGee, Hankla, Backes & Dobrovolny, Minot, N.D., for plaintiff and appellant.

Steven A. Storslee, Storslee Law Firm, Bismarck, N.D., for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] Tri–State Insurance Company of Minnesota ("Tri–State") appeals from a summary judgment dismissing its case against Lawson, Inc., a North Dakota Corporation doing business as DL Enterprise Construction ("Lawson"), seeking reimbursement for insurance payments made to Lake Metigoshe Properties, Inc. ("Metigoshe Properties") for damages to a motel building that resulted from a heavy rainstorm. We reverse and remand, concluding the insurance contract was unambiguous and Lawson was not a co-insured.

I

[¶ 2] On March 13, 2000, Commercial Group West, LLC ("CGW") contracted to build a motel for Metigoshe Properties. The motel was to be manufactured as modules, transported to Lake Metigoshe, and assembled. Each module, consisting of two motel rooms with a hallway in between, was built in Kenmare by CGW and transported to Lake Metigoshe, where the modules were placed together. Each module was wrapped in a plastic sheet when it left the factory, except for the roof, which was to be built after the modules were set in place at Lake Metigoshe.

[¶ 3] The name of an entity called Commercial Structures West, LLC ("CSW") started appearing in construction documents after Metigoshe Properties and CGW contracted to build the motel. CSW was created in case contractors could not be retained to build the motel on site at Lake Metigoshe. CGW and CSW, by separate contracts, hired Lawson as the subcontractor to finish the construction of the motel at Lake Metigoshe.

[¶ 4] Tri–State insured Metigoshe Properties under a builder's risk policy for the construction of the motel. Metigoshe Properties was the named insured on the insurance policy. CSW was listed as an additional insured in the application and in the binder. The builder's risk policy issued by Tri–State showed CSW as a loss payee rather than an additional insured.

[¶ 5] Lawson completed only a portion of the roof before a large rainstorm, on July 2, 2000, damaged the interior units of the motel. A large amount of water pooled on the plastic covering the modules

and leaked into the interior, causing water damage. Tri–State paid Metigoshe Properties $270,000 for the damage. The insurance checks were made payable to Metigoshe Properties and CSW.

[¶ 6] CGW, CSW, and Metigoshe Properties were controlled by some of the same individuals, but Lawson was a separate entity and did not share any officers, shareholders, or employees with either CGW, CSW, or Metigoshe Properties. Lawson was owned by Virginia Lawson, and Dennis Lawson was the general manager.

[¶ 7] Tri–State sued Lawson to recover the insurance proceeds it paid to Metigoshe Properties for the water damage. Tri–State claimed that Lawson's negligence in constructing the roof of the motel caused the water damage and that it should be able to subrogate its claim against Lawson and obtain reimbursement from Lawson for the money it paid to Metigoshe Properties for the water damage. The district court granted Lawson's motion for summary judgment, holding that Tri–State, as the insurer of the owner of the building project, also intended to insure Lawson as a subcontractor.

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 2, and N.D.C.C. §§ 27–02–04 and 28–27–01.

## II

[¶ 9] Tri–State argues it did not intend to insure an unknown subcontractor when it issued the policy to Metigoshe Properties. It contends that the district court erred in holding Tri–State could not bring a subrogation action against Lawson and that summary judgment was inappropriate for several reasons. Tri–State claims the district court erred in granting summary judgment because the district court had to determine the intent of the parties, which is a question of material fact, and it had to find that Lawson was an implied co-insured under the insurance policy even though the subcontractor's identity was not known to the insurer and Lawson made no payment toward the insurance premium.

[¶ 10] "Summary judgment is appropriate when there is no dispute as to the material facts and only questions of law remain to be decided." *Stuhlmiller v. Nodak Mutual Ins. Co.*, 475 N.W.2d 136, 137 (N.D.1991). "Even if a factual dispute exists, summary judgment is proper if the law is such that resolution of the factual dispute will not change the result." *Gratech Co., Ltd. v. Wold Engineering, P.C.*, 2003 ND 200, ¶ 8, 672 N.W.2d 672 (citations omitted). "Interpretation of a written contract of insurance is a question of law for which summary judgment is an appropriate method of disposition." *Stuhlmiller*, at 137. We have summarized our standards for construing an insurance policy:

Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined

term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

*Nationwide Mut. Ins. Companies v. Lagodinski,* 2004 ND 147, ¶ 8, 683 N.W.2d 903 (citations omitted).

Subrogation is an equitable remedy which provides for an adjustment between parties to secure the ultimate discharge of a debt by the person who, in equity and good conscience, ought to pay for it. Generally, when an insurer pays its insured for a loss, the insurer is subrogated to the insured's right of action against any third party responsible for the loss. However, an insurer is not entitled to subrogation from its own insured for a claim arising from the very risk for which the insured was covered.

*American National Fire Ins. Co. v. Hughes,* 2003 ND 43, ¶ 8, 658 N.W.2d 330 (citations omitted). "An insurer is not entitled to subrogation from entities named as insureds in the insurance policy, or entities deemed to be additional insureds under the policy." *Id.* This insurance principle is called the antisubrogation rule. *Black's Law Dictionary* 104 (8th ed.2004). "An entity not named as an insured in an insurance policy is considered an additional insured when, under the circumstances, the insurer is attempting to recover from the insured on the risk the insurer had agreed to take upon payment of premiums." *Hughes,* at ¶ 8.

### III

[¶ 11] Tri–State argues the district court improperly extended the antisubrogation rule to Lawson. The district court concluded that Lawson was an implied co-insured because Lawson was hired

instead of CSW to complete the construction project and that this change in companies did not alter the insurance agreement. The district court held that if Tri–State were permitted to recover from Lawson, Tri–State would, in effect, be recovering on the very risk that it had agreed to take upon payment of the premium by Metigoshe Properties.

[¶ 12] A builder's risk policy is a "property loss insurance contract by which a builder, whether the owner of or general contractor on a building, seeks to insulate himself from loss which he might suffer because of damage to or loss of a building in the process of construction." Jay M. Zitter, Annotation, *Insurance: Subrogation of Insurer Compensating Owner or Contractor for Loss Under "Builder's Risk" Policy Against Allegedly Negligent Contractor or Subcontractor,* 22 A.L.R.4th 701, 704 (1983).

[¶ 13] The coverage section of the insurance contract between Tri–State and Metigoshe Properties provides:

PROPERTY COVERED

1. Buildings and Structures—"We" cover direct physical loss caused by a covered peril to buildings and structures described on the "declarations" while in the course of construction, erection, or fabrication. This includes materials and supplies which will become a permanent part of the buildings or structures, foundations, excavations, grading, filling, attachments, and permanent fixtures.

2. Scaffolding and Construction Forms—"We" cover direct physical loss, caused by a covered peril, to scaffolding or construction forms provided the scaffolding or construction forms are located at the building or structure described on the "declarations."

. . . .

ADDITIONAL COVERAGES

1. Transit and Storage Locations— "We" cover direct physical loss caused by a covered peril to materials and supplies which will become a permanent part of buildings or structures described on the "declarations" while they are:

a. in transit; or

b. at an unscheduled storage location.

The most "we" pay under this coverage is $2,500 plus the "limit" indicated on the "declarations".

[¶ 14] Lawson argues the district court did not err in finding it was an implied co-insured under the insurance policy. Lawson argues the implied co-insured rule is both necessary and equitable in the case at bar to prevent Tri–State from suing to recover for a risk for which it collected a premium. Lawson cites *Community Credit Union of New Rockford v. Homelvig,* 487 N.W.2d 602 (N.D.1992), and *Hughes* as precedents for its position. *Homelvig* involved a party leasing a house from a credit union on a month-to-month basis with an option to purchase. *Homelvig,* 487 N.W.2d at 603. A fire broke out, destroying the kitchen and damaging the remainder of the house. *Id.* The credit union had insurance on the house, and its insurance company paid for the damages and brought a subrogation action against the tenants, alleging they negligently started the fire. *Id.* This Court held that "absent an express agreement to the contrary, a tenant is an implied co-insured under the landlord's insurance policy and the insurer may not seek subrogation against the tenant." *Id.* at 605. The Court adopted the majority rationale that a tenant is an implied co-insured because of the tenant's privity under the lease and the commercial realities under which les-

sors insure leased premises and pass on the premium costs in rent. *Id.* at 603–04.

[¶ 15] Lawson argues that *Hughes* extends the implied co-insured holding in *Homelvig.* In *Hughes,* a closely held corporation had an insurance policy on its vehicles and equipment but did not explicitly name the corporation's owners, officers, or employees as insureds. *Hughes,* 2003 ND 43, ¶ 2, 658 N.W.2d 330. Hughes, who was an employee and officer of the corporation and whose parents owned all of the corporation's stock, started a fire while he was working on his personal snowmobile. *Id.* at ¶¶ 2–3. We held the insurance company could not bring a subrogation claim against Hughes, because the corporation permitted Hughes and its corporate owners to use its shop for work on their snowmobiles. *Id.* at ¶ 14. We concluded the public policy for averting potential conflicts of interest necessitated the preclusion of the subrogation action. *Id.* at ¶ 18. We held that it would compromise the integrity of the insurance company's relationship with the corporation and create a potential conflict of interest to allow the insurance company's subrogation claim against Hughes. *Id.*

[¶ 16] These cases do not compel us to extend the implied co-insured doctrine to the circumstances in the case at bar. The rationale in *Homelvig* does not apply, because the privity of a landlord-tenant relationship is closer than the privity that exists between an owner and a subcontractor. Furthermore, the insurance premiums are not as easily transferred between the party who actually pays the premiums and the party who is seeking to be an implied co-insured. *Hughes* is also distinguishable because a subrogation claim against Lawson would not create a conflict of interest between Tri–State and Metigoshe Properties, because, unlike the

factual circumstances in *Hughes,* Lawson does not share any officers, shareholders, or employees with Metigoshe Properties or CGW.

[¶ 17]   Lawson cites several cases that, it argues, stand for the proposition that an insurer cannot subrogate against a subcontractor if the building is covered by a builder's risk policy.   Lawson principally relies on *Transamerica Ins. Co. v. Gage Plumbing & Heating Co., Inc.,* 433 F.2d 1051 (10th Cir.1970), *Louisiana Fire Ins. Co. v. Royal Indemnity Co.,* 38 So.2d 807 (La.Ct.App.1949), and *Baugh–Belarde Construction Co. v. College Utilities Corp.,* 561 P.2d 1211 (Alaska 1977), as applying the antisubrogation rule in the context of a builder's risk policy for an unnamed party. These cases, however, are distinguishable from the case at bar.   In *Transamerica Ins. Co.,* the builder's risk insurance policy stated:

> "This policy also. covers temporary structures, materials, equipment and supplies of all kinds incident to the construction of said building or structure and, *when not otherwise covered by insurance, builders' machinery, tools and equipment owned by the Insured or similar property of others for which the Insured is legally liable,* all forming a part of or contained in said building or structure, temporary structures, or on vehicles, or in the open; only while on the premises described or within 100 feet thereof."

433 F.2d at 1053 (emphasis added).

[¶ 18]   The court in *Louisiana Fire Ins. Co.* held the builder's risk policy, which stated that the items covered included "builders' machinery, tools and equipment," covered an unnamed subcontractor and made it a co-insured.   38 So.2d at 808. The Nevada Supreme Court held that the clause, "materials, equipment and supplies and temporary structures of all kinds inci-dental to the construction of buildings and structures, and similar properties belonging to others for which the insured is liable," applied to a subcontractor and made it a co-insured.   *J.F. Shea Co., Inc. v. Hynds Plumbing & Heating Co.,* 96 Nev. 862, 619 P.2d 1207, 1209 (1980) (*overruled on other grounds by Lumbermen's Underwriting Alliance v. RCR Plumbing, Inc.,* 114 Nev. 1231, 969 P.2d 301 (1998)); *see also Factory Ins. Ass'n v. Donco Corp.,* 496 S.W.2d 331 (Mo.Ct.App.1973) (unnamed contractor was co-insured under policy which contained an "also covers" provision that included similar property of others).

[¶ 19]   The operative language in these policies, however, is different from the language in Tri–State's policy.   The express references to property of others in the cases cited by Lawson are not present in the Tri–State policy.   The absence of this language is determinative as to whether a third party is an intended co-insured under a policy.   *LeMaster Steel Erectors, Inc. v. Reliance Ins. Co.,* 546 N.E.2d 313, 319 (Ind.Ct.App.1989).

[¶ 20]   *Baugh–Belarde* is factually distinguishable from this case because in *Baugh–Belarde* there was no dispute that the subcontractor was an additional insured under the builder's risk policy. *Baugh–Belarde Construction Co.,* 561 P.2d at 1213.   In that case, the subcontractors were specifically covered under the builder's risk policy "as their interests may appear."   *Id.* at 1214.   In the case at bar, the question of Lawson's being an additional insured is the precise issue of contention between the parties, therefore making the ultimate holding in *Baugh–Belarde* unpersuasive.

[¶ 21]   The remaining main cases cited by Lawson are distinguishable from this case because those cases involved contractual obligations not present in this case.

See *Indiana Ins. Co. v. Carnegie Constr., Inc.*, 104 Ohio App.3d 219, 661 N.E.2d 776 (1995) (insured contractually waived its right to pursue contractor for negligence); *Midwest Lumber Co. v. Dwight E. Nelson Construction Co.*, 188 Neb. 308, 196 N.W.2d 377 (1972) (owner who contracts to procure insurance to cover contractor and fails to do so or who procures such insurance and fails to have contractor named as an insured becomes insurer of the contractor). Metigoshe Properties' agreement to purchase insurance to cover the project in Kenmare was with CGW. Nothing in the record reflects that Metigoshe Properties and Lawson had a written contract to obtain insurance for each other.

[¶ 22] Several cases that are closer to the factual circumstances in this case, however, hold that an unnamed subcontractor may be subject to a subrogation claim. *See Travelers Indemnity Co. of Connecticut v. The Losco Group, Inc.*, 150 F.Supp.2d 556 (S.D.N.Y.2001) (unnamed contractor is not co-insured, because there was nothing in the language of the policy to show an intention to benefit the contractor); *Richmond Steel, Inc. v. Legal and General Assurance Society, Ltd.*, 821 F.Supp. 793 (D.P.R.1993) (unnamed subcontractor is not co-insured, because policy language is not sufficiently expansive to cover subcontractor absent a "property of others" clause); *Willis Realty Associates v. Cimino Construction Co.*, 623 A.2d 1287 (Me.1993) (contractor was not implied co-insured under policy, because policy coverage does not extend to personal property of others within the control of the named insured); *McBroome–Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32 (Tex.Civ.App.1974) (unnamed subcontractor that did not pay for insurance premiums and only had interest in certain tools on property was not co-insured under builder's risk policy).

[¶ 23] After reviewing the cases cited from other jurisdictions and our rationale in *Homelvig* and *Hughes,* we decline to extend the antisubrogation rule to imply that unnamed subcontractors are included under a builder's risk policy issued to the owner of the property.

## IV

[¶ 24] Lawson argues, even if this Court does not conclude that it was an implied co-insured under the contract, some of its property was expressly insured under the insurance contract. The district court held the scaffolding and construction forms supplied by Lawson did not, standing alone, lead to a decision as a matter of law that Lawson was an expressed insured. Lawson argues the coverage of the scaffolding and other materials it provided for the construction project makes it a co-insured under the policy.

[¶ 25] Courts have differed, depending on the language used in the contract, on the extent that an unnamed co-insured is covered by an insurance policy. Some courts have held that insurance policies containing language that refers to property of others more plainly than does the language contained in Tri–State's policy generally preclude an insurer from recovering any amount under the theory of subrogation from an unnamed party. *See J.F. Shea Co., Inc.*, 96 Nev. 862, 619 P.2d 1207 (subrogation not available to insurer, because builder's risk policy covered building under construction and any material, equipment, and supplies of subcontractor); *Baugh–Belarde Construction Co.*, 561 P.2d 1211 (subcontractor's immunity from subrogation was not limited to the amount of loss of own property); *Donco Corp.*, 496 S.W.2d 331 (insured could not recover against contractor, because unnamed contractor was a coinsured under policy that contained an "also covers" provision);

*United States Fire Ins. Co. v. Beach,* 275 So.2d 473 (La.Ct.App.1973) (clause covering builders' machinery, tools, and equipment owned by the insured or similar property of others precluded subrogation); *Transamerica Ins. Co.,* 433 F.2d 1051 (coverage of builders' machinery, tools, and equipment owned by others precluded subrogation against unnamed subcontractor).

[¶ 26] Some courts hold that an insurer may recover from an unnamed co-insured up to the value of the unnamed party's personal property expressly covered in the insurance contract. *See Western Washington Corp. of Seventh–Day Adventists v. Ferrellgas, Inc.,* 102 Wash.App. 488, 7 P.3d 861 (2000) (rejecting the rule that co-insured status for any loss under a builder's risk policy automatically insulates the co-insured from a subrogation claim); *Travelers Ins. Companies v. Dickey,* 799 P.2d 625 (Okla.1990) (insurance policy would shield unnamed insured only to the extent of the value of his property, because his status as a co-insured would not afford him immunity from subrogation coextensive with the owner's entire coverage); *McBroome–Bennett Plumbing, Inc.,* 515 S.W.2d 32 (unnamed subcontractor considered an insured only to the extent of his limited interest in the tools and property at the construction site).

[¶ 27] Another court went further and held that an unnamed party was not protected to any extent from subrogation despite the fact the contractor was paid for personal property damaged at the construction site. *See Willis Realty Associates,* 623 A.2d 1287 (contractor was not co-insured merely because payments made to the named insureds under the policy included the cost of replacing some of the contractor's construction materials and equipment).

[¶ 28] This Court's rationale in life insurance cases is persuasive in regard to the question in the case at bar. This Court has held an insured's failure to change the name of the beneficiary on his life insurance policy from his ex-wife's to his new wife's after his divorce and remarriage did not affect the ex-wife's right to the life insurance proceeds. *Nunn v. Equitable Life Assurance Society of the United States,* 272 N.W.2d 780, 781 (N.D.1978). This Court held to the general rule that the named beneficiary is controlling and that intent alone will not effectuate a change of the beneficiary. *Id.* at 782. The name on the insurance policy dictated who the beneficiary was, not the intent of the insured. *See also Estate of Leier,* 524 N.W.2d 106 (N.D.1994) (designation of ex-wife and children controlled ownership of IRA after a divorce and remarriage). In the case at bar, the insurance policy did not name Lawson as an insured under the policy, and the possible intent of some parties should not control over the express terms of the contract.

[¶ 29] Lawson attempts to use the clause covering materials and supplies that became a permanent part of the building and the clause covering scaffolding and forms to completely protect itself from subrogation. *See LeMaster Steel Erectors, Inc.,* 546 N.E.2d at 319. We conclude, however, a party who is not expressly named as a co-insured under the policy is protected from subrogation only to the extent that the insurance policy expressly covers the party's property. In the case at bar, Dennis Lawson testified in his affidavit that Lawson provided scaffolding and other materials, including insulation, fasteners, siding, soffit, and fascia, for the project. He claimed these materials were damaged in the rainstorm. Tri–State is not allowed to subrogate the value of these materials in its claim; however, these ma-

terials do not give Lawson the right to "claim the entire cloak of immunity from subrogation actions by virtue of its limited interest in a small portion of the property" covered by the insurance policy. *McBroome–Bennett Plumbing, Inc.*, 515 S.W.2d at 40. While the liability of Tri–State under this policy should extend to Lawson's property, "this should be its only liability and its subrogation rights guaranteed by law, equity, and contract against" Lawson "should not be limited or circumscribed." *Id.*

V

[¶ 30] The policy is not ambiguous, and it does not name Lawson as a co-insured under the policy. We decline to extend an implied co-insured status upon Lawson because of its relationship with Metigoshe Properties as a subcontractor, and conclude the insurance policy does not give blanket immunity to Lawson merely because it may cover some of its property. If Lawson was negligent in failing to prevent the water damage, Tri–State may subrogate its claim against Lawson for the loss it paid to Metigoshe Properties, except for the value of Lawson's property that was expressly covered by the insurance policy. We therefore reverse and remand this case to the district court so it can analyze whether Lawson was negligent and find the value of Lawson's damaged property.

[¶ 31] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, concur.